WILLIAM B. WARREN, Plaintiff in Error, *v*. THE PRESIDENT AND TRUSTEES OF THE TOWN OF JACKSONVILLE, Defendants in Error.

### ERROR TO MORGAN.

The public is an ever-existing grantee, capable of taking dedications for public uses, and its interests are a sufficient consideration to support them.

Parol dedications are good.

The intention of a party, manifested by express consent, or acquiescence in the user, will govern in determining what is a dedication.

Privies in estate will be bound by the deeds and acts of their grantors, and they cannot resume a grant after the public has entered upon its use, while the use continues.

A deed cannot be delivered and accepted partially, for the purpose of conveying title to the grantee, and yet so as not to give effect to the conditions, recitals, and limitations in it.

It will be presumed that deeds duly acknowledged and recorded, have been delivered to and accepted by the vendee, and that parties and privies as well as the public, are acquainted with their contents. Whoever questions these facts, must assume the burden of proving them.

A right by prescription cannot be raised against the consent of the owner; but the use may be so long unobjected to, as to authorize the finding of an implied consent, and to raise a presumption of a grant.

In actions of ejectment in this State, the general issue only shall be pleaded.

No inference or conclusion will be drawn in this State against the owner of land lying uninclosed, which is travelled over, to establish an easement in favor of the public.

THIS cause was tried before WOODSON, Judge, at September term, 1852, of Morgan Circuit Court.

M. McCONNEL and W. HERNDON, for plaintiff in error.

D. A. SMITH, for defendants in error.

SCATES, J. Warren brought ejectment for a piece of land lying in west half N. E. quarter, sec. 20, T. 15, N., R. 10 west, and described and bounded as follows, " beginning on the north line of the public road, called the State road, and running east and west across said tract of land, and at a point where said public road passes the east line of said tract of land, and running from thence west, one hundred feet, more or less, to the east side of a lot of land whereon stands a small church, now called the Universalist church, and from that line thus described, said land extends north to the north boundary of said tract of

land of which it is a part, retaining the same width as the south front, of one hundred feet." Title is traced and admitted from the United States through the patentee and Dr. Chandler to Joseph Duncan, to the premises. And that in June, 1841, the United States recovered judgment against Duncan, and that the premises were levied upon, and sold to Warren, on the 5th day of October, 1847, and conveyed by the United States marshal for the district of Illinois. It was also in proof, that on the 29th of October, 1835, Joseph Duncan and wife conveyed one undivided fourth of a piece of land to Thomas T. January, embracing so much of the above premises as lies between the line of Court street on the south, and North street on the north, (and called Railroad square,) — and that in said conveyance was this agreement, " and it is agreed that all of said streets, and another street to be called Railroad street, are to run through, and be kept open, through said square ; but it is agreed that if a sale of any privilege can be effected to the railroad company, for the erection of buildings on said square, it shall in no case obstruct a street; the proceeds are to be divided, one fourth to said January, and three fourths to said Duncan, and for all other purposes, it is agreed the said square shall be kept open for public use."

It was further proven, that on the 26th of September, 1836, Thomas T. January and wife conveyed to Joseph Duncan, lots 8, 9, and 10, in Johnson's addition to Jacksonville, and " also all the interest which the said January holds in the Railroad square," (the lands described in the foregoing deed,) " laid off by said Duncan on the lands bought of Dr. E. Chandler, one half of which was deeded by said Duncan to said January, but in reconveying his interests in said square to said Duncan, it is understood that the said Duncan is to open Church street, as far north as lot number twenty-one in said Johnson's addition, or to North street, and has full power to close the said square, or to sell or dispose of it, as he, the said Duncan, may think proper." It was in proof that Warren had seen this deed before his purchase. That Duncan had a private unrecorded plat of these lands among others, upon which the premises were marked " Duncan's." That part of the premises had always laid open, and part had been used and travelled by the public for three years before Duncan's death, and hitherto, for more than seven years, and was as much in the use and possession of the public, as streets by working on the same, and claiming it as such. In 1835, a church was built on the lot on the west, and the lot on the east side was inclosed.

The plaintiff excepted to the modification by the court of his

seventh instruction, which was as follows : " The question to be determined by this jury is, whether Warren or any of the former owners of this land, has given and dedicated said land to the public, as a public street of the town of Jacksonville ; " and to enable the jury to find that said gift or dedication has been made, it must be proved to their satisfaction, that some act has been done by some one of said owners, " or such an acquiescence in the use of the land by some of them," clearly indicating the intention to make said land a public street; and the bare fact that said land was left open, and the people travelled over it, is not of itself sufficient to establish such gift or dedication.

The court refused the following instructions, which was excepted to : 2d. Private property cannot be taken for public use without due compensation first made to the owner of the same ; and this land having belonged to Chandler and Duncan, and now to Warren, cannot be taken, and could not heretofore have been taken by the incorporation, or the people of the town of Jacksonville, and converted into a public street, without the consent of said owners, or without first paying for said land.

3d. The deed from January and wife to Duncan, of certain lots of land in McHenry Johnson's addition to the town of Jacksonville, wherein January recites that Duncan is to open Church street as far north as North street in Jacksonville, and without saying how far south said street is to be opened from North street, is not sufficient evidence to prove that Duncan did give and dedicate said land to the public, as a public street, commencing on the south at State street, and running north to said North street. Said deed is not evidence of any thing whatever, unless it is proven that Duncan received said deed from January, and that said recital in said deed was known to Duncan when he received the deed, and that the same was the result of, and in pursuance of the contract and agreement made by Duncan with January, as a part of the consideration of said deed, and as a part of said contract in the purchase of said lots of land.

4th. The incorporation of Jacksonville or the people, being desirous to open a public street through the private property of any citizen, may do so by laying out said street, and having the value of the right of way over the land appraised by disinterested persons, and said value paid for, before said street is opened; but they cannot, because said land is left open by the owner, enter upon the land; and without the express consent of the owner, convert said land into a public street, without paying for the land : and length of time, however long said land may be

travelled over and used without the consent of the owner, is not sufficient to establish said land as a public street.

The plaintiff also excepted to the following instruction for the defendant: If January and wife made to Duncan the deed offered in evidence by the defendants, and that at the date of that deed Church street was opened from State street to North street, and has so continued from that time up to the time of the institution of this suit, and hath, during all that time, been used by the public as a street, without let, hindrance, or objection of the owners of the land in controversy in this case, that from these circumstances the jury may infer a dedication of the land in controversy to the public, to be used as a street; and the jury may, if they see fit, find a verdict for the defendants, notwithstanding the plaintiff may have established his fee-simple title to the land in controversy.

The jury found a verdict for the defendants, and a second new trial was refused.

We shall decide this case upon the question of dedication by January and Duncan, and to which Warren is a privy by deriving title through them, and of which he had both actual and constructive notice. We are of opinion that the recital of the agreement in January's deed to Duncan, reconveying the interest in the Railroad square, is sufficient evidence of a dedication for Church street, from State street to North street, when taken in connection with the recitals of dedications for similar purposes in Duncan's prior deed to January, and the subsequent acts of the public in using, claiming, and working the same as a street for seven years, three of which were in the life of Duncan, to authorize the jury to find for the defendants to that extent. Duncan had agreed, in conveying this interest to January, that "all of said streets, and another street, to be called Railroad street, are to run through, and be kept open, through said square; and a sale of any privilege to the railroad," " shall in no case obstruct a street," and that " the said square shall be kept open for public use."

These facilities of public easements of way through the Railroad square, may have been of particular advantage to January as a lot holder, as well as a general advantage to the town and community, and to this end they might constitute an essential element of the value of the interest he acquired under the deed. So again, when he sold the same interest back to Duncan, with three other lots, part of the consideration seems to have been, an additional easement of way to the public by extending Church street. This last easement presents a more prominent consideration, in the fact, that he consents that Duncan may

" close the said square," and thereby destroy all the easements created by Duncan's deed to him.

This street might confer great value to other lots of January, as well as be of great advantage to him in their use and enjoyment. Taking the two deeds together, it is very evident that the parties intended to increase the facilities of their own enjoyment of this and other town property, if they had any, or to add to its value by creating these streets. It would be unjust to allow either party, at pleasure, to despoil the other of these advantages, or to reclaim them of the community after a long use and enjoyment under such an appropriation for their benefit. 12 Wheat. R. 582. The public is an ever existing grantee, capable of taking dedications for public uses, and its interests are a sufficient consideration to support them. City Cincinnati v. Lessees of White, 6 Pet. R. 431.

The mode of making dedications is immaterial. They are not within the statute of frauds, and are good by parol. Godfrey v. City of Alton, 12 Ill. R. 35. The intention of the party, manifested by express consent, or acquiescence in the user, will govern in determining whether it be a dedication. 6 Pet. R. 431 ; 12 Ill. R. 35.

Warren is privy in estate with Duncan, and must be bound to the same extent by these deeds and acts under them, and it is not in the power of either to resume this grant after the public have entered upon the use designed, nor while it is so used.

We see no solidity in the objection that the deed contemplated a future act of Duncan to make a dedication. The acceptance of the deed, we think sufficient to dedicate, or at least to sustain a verdict so finding. That Duncan accepted the deed, we are not at liberty to doubt from the proofs. We find this deed on record, the land marked as his on his private map, and the public using the land as a street, some years before his death.

To defeat the dedication upon the ground of non-acceptance of the deed, would, indeed, be to defeat the title of Duncan under it. If the deed has not been delivered and accepted, it is inoperative. It might have been delivered to a third person and accepted as an escrow. But it could not be delivered and accepted partially, for the purpose of conveying title to Duncan, and yet so as not to give effect to the conditions and recitals and limitations. We must, under the proofs, presume a delivery and acceptance, and consequently must presume Duncan cognizant of the contents of the deed.

The modification of the seventh instruction, we think cor-

rect.    Such an acquiescence in the use of the public by an owner of land as clearly indicates an intention to dedicate, may warrant a jury in finding a dedication under the proofs in this case.

The second instruction, refused, is faulty in assuming title in Warren, for that was the question in controversy.    We see no other objection to it.

The court have already laid down and approved of principles in relation to the acceptance of the deed by Duncan, which militate against the third instruction refused by the court. We must indulge the presumption that deeds duly acknowledged and recorded, have been delivered and accepted, as well as executed by the vendor, and parties and privies, as well as the public, are acquainted with their contents.    Whoever questions any of these facts must assume the burden of proving them.

The fourth instruction should have been given.    It is very broadly worded, but does not preclude the acquisition of a right by prescription.    A right by prescription cannot be raised against the consent of the owner; but the use may be so long unobjected to, as to authorize the finding of an implied consent, and to raise a presumption of consent, and even of a grant. The instruction given for defendants is correct.

It is objected that this deed is used by way of estoppel under the general issue, which is inadmissible, and that it should have been set up by special plea.    Without investigating the doctrine of special pleading in ejectment, we deem it sufficient to refer to the statute of our own State, which provides that the general issue only shall be pleaded; under which the same matter may be given in evidence as under the common law action of ejectment, except proofs of some fictitious matters, which are abolished.    Rev. Stat. 1845, p. 206, § 17.

The verdict is not warranted by the proofs and the law, for that portion of the land lying northward from lot twenty-one, or North street.    This portion is not included in the dedication.

The use and occupation of this portion is only about seven years, without any proof of assent or dissent.    It was over lands lying uninclosed and in common.    While so much land lying in common in this country, remains free to public uses and travel, until circumstances induce owners to inclose, we can deduce no strength of inference or conclusion from mere travel across it by the public, without objection from the owner.    It is neither the temper, disposition, fashion, or habit of the people, or custom of the country, to object to community enjoying such privilege, until owners wish to inclose.

This use is not shown to have been adverse, and upon a claim of it as an easement, for it does not appear that any owner ever desired to use any part of the tract to which it belonged. We are of opinion that the prescription for a right of way over this portion is not sustained, and that the verdict therefor is not warranted by the evidence.

Judgment reversed, and cause remanded, with *venire de novo.*

TREAT, C. J., concurred in reversing the judgment.

*Judgment reversed.*