Carpenter v. Gwynn.

The judgment should be affirmed, with costs.

[KINGS GENERAL TERM, December 9, 1861. *Emott, Brown* and *Scrugham,* Justices.]

————— ·—·—·—— —————

CARPENTER *vs.* GWYNN.

Where an individual asserts a perpetual public easement in the lands of another, and repeatedly tears down fences upon such lands, in assertion of the right of himself and all others, to use the land as a highway, on the ground that it has been dedicated as such to the public, if the owner's title is undisputed, and the only question is upon the right of the individual to exercise the authority or commit the acts complained of, a court of equity will entertain the case, and determine that question.

No specific length of time is sufficient to establish the fact of a dedication to the public. There may be sufficient acts of the owner of land and the public within two years, or even less, to estop the former from asserting his original dominion over his property, and to entitle the latter to its use. *Per* EMOTT, J.

But acts and declarations which are to have this effect must be unmistakeable in their purpose, and decisive in their character.

In 1852 a strip of land, sixty feet in width, was owned partly by the plaintiff and partly by the defendant. The plaintiff instituted proceedings to have

a public road laid out across upon it, but discontinued the same. In 1853 the defendant conveyed to R. and R. to the plaintiff, who thus became the owner of the whole strip of land. Each of these deeds expressed the intention of permitting the use of the premises either as a public or a private road. After the plaintiff acquired the title to the whole of the land, he laid it out as a road, graded and worked it at his own expense, and fenced it, on both sides. When the road was first opened, in 1854, gates were placed at each end, which remained there while the plaintiff was grading the intermediate portion of the road. From 1857 to 1859 no gates were standing on the road, and it was used and traveled by the public generally, with the plaintiff's knowledge, but during that time the work of grading the road was going on; and the gates were removed, to facilitate the grading. When that was completed, at least one of the gates was replaced. *Held* that these acts of the plaintiff did not amount to an irrevocable dedication of the land to the public as a highway. That, to produce that result, the plaintiff must be shown to have declared by words, or by actions, or both, his irrevocable intention to make the strip of land not merely a road or a way of passage, but a public way.

*Held, also,* that no one had a right to infer from the removal of the gates, under the circumstances, that it was the plaintiff's purpose never to replace them. That no such presumption attached to the act, and no estoppel arose.

THIS was an appeal from a judgment ordered at the circuit, after a trial before a justice of the court without a jury.

The complaint alleged that the plaintiff was, and for more than five years last past had been, the owner and possessed of a piece or strip of land, situate in the village of Newburgh, in the county of Orange, particularly described in the complaint, and being sixty feet in width, and of certain other lands adjoining said strip of land, on both sides thereof. That the said strip of land, for the whole length thereof, had been for more than a year last past, and still was, laid out by the plaintiff as a private avenue for the use and accommodation of the plaintiff, who owns land adjoining the same, and for the use and accommodation of certain individuals to whom the plaintiff had conveyed a right of way over the said strip of land. That the said avenue is laid out the whole width of the said strip of land (viz. sixty feet) throughout its entire length, except opposite certain

lands belonging to the defendant, where the said avenue is only laid out and made of a width of twenty-seven feet on each side of the center line thereof, leaving a strip of land three feet in width on each side of said avenue opposite the lands of the defendant, belonging to the plaintiff. That the parcel or strip of land, before mentioned and described, was the absolute and individual property of the plaintiff, subject only to such rights as he had expressly granted to individuals who had purchased from him lands adjoining said avenue; that the said strip of land had never been in any way dedicated or given up to the public use; and that the defendant had no lawful right, title or interest in the said lands, or in any part thereof, and no right of way over the same or any part thereof. That on each side of the said parcel of land, on the outer margin thereof, adjoining the lands of the defendant, there was, and during the time aforesaid had been, a substantial stone wall; and inside of said stone wall, and three feet distant from said outer margin towards the center of said strip of land, and on each side thereof, the plaintiff caused to be erected another permanent and substantial fence, consisting of posts set in the ground with boards nailed thereon. The plaintiff further states—That on the 17th day of May, 1859, and again on the 18th day of May, 1859, and again on the 19th day of May, 1859, and again on the 23d day of May, 1859, and again on the 24th day of May, 1859, and again on the 25th day of May, 1859, and again on the 27th day of May, 1859, and frequently since said last named day, and up to the date of this complaint, the defendant tore down and prostrated portions of the said fence, particularly said inner fence, standing wholly on lands of the plaintiff, and drove his cattle through the same on the lands of the plaintiff; and upon each of said occasions the plaintiff caused the said fence to be put up and restored, but the defendant again and again threw down the said fence, and avowed and declared his intention to continue to throw down the said fences

every time the plaintiff should put up the same. That on or about the 24th day of May, 1859, and again on or about the 27th day of that month, the plaintiff prosecuted the defendant before a justice of the peace, to recover for the damages occasioned by the said trespasses committed before those days; but notwithstanding such prosecution, the defendant had persisted and still persisted in tearing down and destroying the said fences, and in driving cattle through said fence upon said strip of land; and the defendant, setting up some pretended right in said strip of land, had repeatedly declared that he would continue to pull down the said fence as often as, and whenever the plaintiff should, cause the same to be rebuilt. That in consequence of the wrongful act aforesaid of the defendant, and in consequence of the avowal and declaration aforesaid of said defendant, the plaintiff had been and was greatly interrupted and injured in the use and enjoyment of the parcel of land described, and his property, to which the said avenue was the access, is thereby injured and depreciated in value, and the plaintiff had sustained and was continually sustaining damages, by reason of the matters aforesaid. That the continued and repeated trespasses committed by the defendant were not capable of being adequately compensated by any damages the plaintiff could recover in actions at law, and from their constant recurrence, had become and were a nuisance, which the plaintiff had a right to have prevented; and if the plaintiff should be left to his remedy by action to recover damages for such trespasses, it would cost a multiplicity of suits, continually recurring, and would lead to interminable litigation, and that the conduct of the defendant was likely to lead to and cause frequent breaches of the peace. The plaintiff charged and insisted that he was entitled to the process and injunction of this court, to restrain the defendant from any further interference with the said property of the plaintiff, or the fences thereon. He therefore demanded judgment that the defendant and his agents and servants might

LAW N... LIB... 399 ...

Carpenter *v.* Gwynn.

be restrained, forbidden and enjoined by the order and injunction of this court, from going upon, or permitting his cattle to go upon the said land, of the plaintiff before described, or any part thereof, and from the throwing down, injuring, or in any way interfering with the fence on said land, or any part thereof, and that the defendant might be adjudged to pay the costs of this action ; and for general relief.

The defendant, by his answer, admitted the doing of the acts complained of, and justified the same on the ground that the land on which the fence thrown down by him was placed had been dedicated by the plaintiff to the public as a highway ; and that therefore the plaintiff had no right to erect fences along said highway, and that the defendant had a lawful right to remove said obstructions for the purpose of driving his cattle from said highway to his adjoining lands.

The action was tried at the circuit, before Justice LOTT, without a jury. The judge found the following facts, to wit: That on the 27th day of December, 1852, the defendant owned a part and the plaintiff the residue of the lands now comprising Carpenter avenue. That on that day, upon the petition of the plaintiff, the trustees of the village of Newburgh instituted proceedings to open said Carpenter avenue as a public street. Afterwards, on the 30th day of May, 1853, such proceedings were discontinued at the plaintiff's request, and the plaintiff paid the costs of such proceedings. That since the last mentioned day, the corporate authorities of the village of Newburgh have never exercised any authority or control over Carpenter avenue, nor interfered with it in any way. On the 14th day of November, 1853, the defendant executed and delivered to one George Reed a deed for a piece of land in the village of Newburgh, three hundred and forty feet long and sixty feet wide, to be used by the grantee or his assigns as a public or private street, at his or their option. On the 15th day of November, 1853, the said George Reed conveyed the same piece of land to the

Carpenter *v.* Gwynn.

plaintiff, to be used by him or his assigns as a public or private street, at his or their option.   Upon the execution and delivery of the said last mentioned deed, the plaintiff became and was the owner of the entire land comprising Carpenter avenue, and also of other lands adjoining the same.   That soon after such last mentioned deed was executed, and within the same year, (1853,) the plaintiff laid out and opened Carpenter avenue, to the width of sixty feet, the whole length thereof over his own land, including within its bounds the piece of land conveyed by the last deed.   He graded the same, made a road bed its entire length, at his own expense, and at a cost of about $5000, and he also fenced it on both sides nearly its entire length.   That such avenue extends from Gidney avenue at the south, to North street on the north. That said Gidney avenue and North street, at the time of laying out and opening Carpenter avenue, were and still are public highways.   That the plaintiff first placed a gate on Carpenter avenue, at the south end thereof, near Gidney avenue, in 1854, which gate remained there until some time in the spring of 1857, when it was removed for the purpose of grading the ground where it stood.   That after such grading was completed, and in the year 1859, another gate was put there.   That the plaintiff also placed a gate on said avenue, at the north end thereof, in 1854.   That remained there till the fall of 1856.   It was then removed for the purpose of grading where it stood.   After the grading, and in 1859, the posts (but no gate) were put back again in the same place.   A gate was put on further south, towards Castle avenue.   From the spring of 1857, until the alleged trespasses, by the defendant, in May, 1859, there was no gate or other obstruction on said avenue, but it was left open by the plaintiff for the use of the public, to be used as a public highway, and not as a private way only.   To this finding and decision the plaintiff duly excepted.   That during that period it was used and traveled by the defendant and the public generally,

as such public highway, both on foot and with horses, wagons and carriages. It was traveled by farmers and by persons riding for pleasure; it was an open thoroughfare the whole length thereof; it was so used by the public, with the knowledge of and without objection by the plaintiff, except as hereinafter stated. But such use of it by the defendant, except on foot, was not known to the plaintiff till May, 1859; that ever since said avenue was opened, the defendant has owned and still owns lands bounding on the same, both on the east and west; that during the period aforesaid, and before the acts complained of by the plaintiff, the defendant used the same in driving his teams and cattle thereon, to and from his said adjoining lands; that the plaintiff never forbade any person or persons from traveling or driving over said avenue, (except the defendant, in May, 1859, when the controversy between them arose,) but he, some time between 1855 and 1858, forbade one person from using said avenue as a pasturing ground for cattle. That on the 20th day of December, 1853, the plaintiff conveyed to one Edward Bell a lot of land which the plaintiff then owned on the east side of said Carpenter avenue, and which is described in said deed of conveyance as extending to and along Carpenter avenue; and on the 18th day of October, 1854, he conveyed to one Charles W. Adams about eleven acres of land, then owned by the plaintiff, also on the west side of Carpenter avenue, and therein described said lands as extending to the center of Carpenter avenue, with the right and privilege to said grantees, their heirs and assigns, to use Carpenter avenue as a private way in common with all persons who should derive title from said plaintiff or his assigns, (the said plaintiff reserving to himself, his heirs and assigns, the right of making the said avenue, or any part thereof, a public street, at any time thereafter, at his or their option;) both of which deeds are hereinafter referred to. That immediately after the alleged trespasses mentioned in the complaint, the plaintiff erected gates on such avenue near the south end thereof, and

also at or near Castle avenue, which is an avenue intersecting Carpenter avenue from Powell avenue, another public street. That gate posts were put up, also, at that time at the north end of Carpenter avenue, but no gate was ever hung on the posts thus put up there, and the gates put up at the other places as aforesaid have been seldom closed. They are not generally closed in the day time, and then not closed long at a time. That the plaintiff has made the fences upon the sides of said avenue, all at his own expense. That the defendant, in the months of May and June, 1859, and before the commencement of this action, against the will of the plaintiff, and after being forbidden by the plaintiff, used and continued to use the said avenue, claiming that the same was a public street, and drove his cattle over the same, and through a pair of bars which the defendant had placed in the fence on the west side of said avenue, built on the line between the avenue and the defendant's land. That in May, 1859, (the plaintiff having placed an inner fence across said bars, upon said avenue, to prevent access therefrom by the defendant to to his own lands,) the defendant tore down such inner fence, and drove his cattle through the same and upon said avenue. That the plaintiff caused such inner fence to be immediately repaired, and the defendant again tore the same down, and drove his cattle through the same, which was repeated forty times, until the injunction in this action was served. That the plaintiff prosecuted the defendant in two separate actions, before a justice of the peace having jurisdiction of the parties and the subject matter—one of which was commenced on the 24th and the other on the 27th day of May, 1859, for the trespasses alleged to have been committed before those days ; that in one of those actions the plaintiff complained as in the defendant's answer alleged ; that the defendant answered by a general denial only, and did not interpose any plea of title, and a verdict was rendered therein for the defendant.

Upon the facts so found, the judge further found, as a

Carpenter v. Gwynn.

conclusion of law, 1st. That the plaintiff had dedicated the strip of land described in the complaint, (known and distinguished as Carpenter avenue, and on which the acts complained of by him were committed,) to the use of the public, as and for a public road or highway, and that the same was not laid out merely as a private avenue for the use and accommodation of the plaintiff, and certain individuals to whom he had conveyed a right of way on said strip of land, as alleged in his complaint. 2d. That the said strip of land was so dedicated, before the commission of the said acts, and that such acts were not trespasses. 3d. That the plaintiff was not entitled to the injunction and relief asked for by him. 4th. That the order for an injunction should be recalled, and that judgment should be entered for the defendant with costs.

The plaintiff appealed from the judgment entered in pursuance of these directions.

*T. McKissock*, for the appellant.

*Fullerton & Van Wyck*, for the respondent.

*By the Court*, EMOTT, J. We are constrained to differ from the conclusion of the learned judge who tried this cause, upon the main question which its presents. The action is brought to stay by injunction the commission of repeated trespasses by the defendant in removing a fence upon the plaintiff's land. The defendant justifies on the ground that the land upon which the fence was placed had been dedicated by the plaintiff to public use as a highway. The judge at the trial held that there had been such a dedication, and therefore dismissed the plaintiff's complaint.

The strip of land to which the controversy relates is sixty feet in width, extending from one highway to another in the village of Newburgh. It has been graded and worked as a road, but it may of course be either a private road or a pub-

lic highway.  The title to the soil is in the plaintiff, and both the parties have other lands adjoining it.  The plaintiff put certain fences upon it, adjoining the defendant's land, so as to exclude him from using it as a road.  The defendant repeatedly tore down these fences, and thus asserted a right to use the road for access to his lands, on the ground that it was a common public highway.  It is to restrain these constant removals of this fence, and the use of the road as a highway, that this action is brought.

If the defendant has not the justification which he claims by virtue of a dedication of the land to public use, the plaintiff's action is well brought.  The acts of the defendant are not wanton trespasses committed merely to vex his neighbors, and which the repeated infliction of damages and the payment of costs would be adequate to punish and to suppress. He asserts a perpetual public easement in these lands, and his acts of interference with the plaintiff are in assertion of the right of himself and all others to use this strip of land forever, as a public highway.  In time, if not restrained, they may afford the vindication of such a claim.  The existence of a highway over this land would of course be destructive of its value to the owner, and therefore the use of the land by the defendant or others for that purpose, and the removal of fences for that object, are acts substantially destructive of the inheritance, or of the entire value of the property to the owner.

There certainly are cases even of such injuries, in which a court of equity will not interfere.  The right of the plaintiff, or the subject of that right, must be capable of being clearly ascertained, and his own title undisputed.  If he has not been in possession of the property, or if his right to it or to its enjoyment be denied, he may be required to establish his title in an ordinary action at law.  But where the plaintiff's title is undisputed, and the only question is upon the right of the defendant to exercise the authority or commit the acts complained of, a court of equity will retain the case, and de-

termine that question for itself. The case of *Holdane* v. *The Trustees of Cold Spring* (21 *N. Y. R.* 474, 23 *Barb.* 103,) illustrates the principle, and is an authority for such a suit as the present, in a case very nearly resembling it.

In 1852 the strip of land which is now in question was owned partly by the plaintiff, and partly by the defendant. The plaintiff instituted proceedings to have a public road laid out across or upon it, but subsequently discontinued these proceedings, thus indicating his intention at that time not to make this a public highway, at least by the ordinary procedure of the statute. In 1853 the defendant conveyed to George Reed, and George Reed to the plaintiff, who thus became the owner of the whole strip of land. Each of these deeds expressed the intention of permitting the use of the premises either as a public or a private road. The land thus conveyed was suitable and was evidently intended for the one or the other. It is sixty feet wide and three hundred and fifty long, a part of a strip or avenue of the same width which was subsequently fenced, extending from one public highway to another. After the plaintiff acquired the title to the whole of the land, he laid it out as a road, graded and worked it at an expense of upwards of $5000, and fenced it on both sides. When the road was first opened, gates were placed at each end. This was in 1854, and these gates or one of them remained, if I understand the evidence and the finding of facts, while the plaintiff was grading the intermediate portion of the road, until it became necessary to grade that part of it where the gates stood, that is, the extremities, at Gidney avenue on the south and North street on the north. This was in the autumn of 1856 and the spring of 1857, and down to that time we cannot find any act or declaration of the plaintiff distinctly announcing or indicating a purpose to make this road a public highway. On the contrary, we have unequivocal evidence of a different design. The application for the opening of a public highway had been formally withdrawn. The subsequent working was at the plaintiff's indi-

vidual expense, and his dominion and control of the road had been indicated in the most unequivocal manner, by the erection of gates across the road.

If a dedication of the road to public use, and a relinquishment of all control over it, is to be made out, it must be by the subsequent conduct of the plaintiff in respect to it. This action was commenced in July, 1859, and the acts of the defendant which are complained of were committed in May and June of that year. The period within which the plaintiff's conduct is alleged to have afforded sufficient evidence of the dedication of his property to the public, extends over but two years. It appears that during that time no gates were standing on the road, and it was used and traveled by the public generally, on foot and with vehicles, with the plaintiff's knowledge. During all this time, it appears by the evidence the work of grading the road was going on; after that was completed, and shortly before the commencement of this suit, the gates or one of them was replaced. It is no doubt true that no specific length of time is sufficient to establish the fact of dedication. There may be sufficient acts of the owner and the public within two years, or even less, to estop the former from asserting his original dominion over his property, and to entitle the latter to its use. But acts and declarations which are to have this effect must be unmistakable in their purpose and decisive in their character. The plaintiff must be shown in the present case to have declared by words or by actions, or both, his irrevocable intention to make this strip of land forthwith not merely a road or a way of passage, but a public way.

Now, as I have said, all the acts of the plaintiff, down to the removal of the gates, indicated a contrary intention. These acts must be considered in construing his subsequent conduct, and I think it would be dangerous, and would be going beyond the authorities, to hold that throwing this road open and silently permitting an indiscriminate use of it for two years, considering its origin and history, would make out

Carpenter *v.* Gwynn.

its dedication to the public as a highway. There is nothing, it will be seen, but this permissive use to establish such a right. There was no declaration by a map or other designation of the road as a street, that it was opened as a highway. It cannot be that a man who has built a road across his lands avowedly and obviously as a private way, should lose his control of his property and confer on the public an irrevocable title to its use, by merely removing the obstructions upon it and leaving it open for two years. The present case, however, hardly goes as far as this. When the gates on this road were removed, neither the public nor the defendant were authorized to infer that the removal indicated a dedication to public use, because there was another sufficiently obvious reason for the removal at that time of those visible marks of the plaintiff's continued control of his property. They were taken down to facilitate the grading of the road, and not to publish to the world an abandonment of all control over it; and if the grading was not hastened to completion, or the gates were not instantly replaced when it was possible to do so, yet no one had a right to infer from the removal of gates, under such circumstances, that it was the plaintiff's purpose never to replace them. No such presumption attaches to such acts, and no estoppel arises.

It is not pretended that any private rights have been acquired on the faith of a presumed dedication of this road to the public. Even to the defendants, it is at most only a question of convenience.

We are of opinion that the facts found by the judge fail to make out an irrevocable dedication of this road by the plaintiff to public use, and that the defendant failed to justify his removal of the fences erected upon it.

There must be a new trial; the costs to abide the event.

[KINGS GENERAL TERM, December 9, 1861. *Emott, Brown* and *Scrugham*, Justices.]