# THE ILLINOIS INSURANCE COMPANY

## *v.*

## HANS H. LITTLEFIELD *et al.*

1. WAY—*alley, whether a public or private way.* Where the owner of lots three and four in a certain block in a city, which adjoined each other, sold and conveyed all of lot four except ten feet on the east side thereof, which was next to lot three, the deed containing this clause: "The remaining ten feet of the east side of said lot being reserved for an alley between the parties to this deed:" *Held*, that the purpose of the reservation was not for the use of the public, but for the parties to the deed.

2. EASEMENT—*interest of public in.* If A agrees with his neighbor, an adjoining owner of land, that he shall have a pass-way ten feet wide over

A's land, and that it shall be an alley between them, this will give the public no right to the use of the same or create a public easement.

3. Dedication—*intention must appear.* A dedication of land to public use may be made by mere verbal declarations, if accompanied by such acts as are necessary for that purpose; but, to make a valid dedication, an intention to appropriate the right to the general use of the public must exist. Where the appropriation is for the use of particular individuals only, and made under circumstances which exclude the presumption that it was intended for the public use, it will not amount to a dedication.

4. Same—*use by the public, alone, is not sufficient.* Where adjoining owners of land agree to reserve an alley between their premises for their own use, the fact that the same for years is open to the public use; that in several conveyances it is described as an alley, and that the owner of the soil never paid taxes on the same, will not bring the alley into existence as a public easement.

5. Same—*acceptance essential.* In order to establish a dedication of land to the public for a way, proof of its acceptance as such by the public, acting through the proper authorities, is essential.

6. Estoppel—*by recitals in deed.* Where a party accepts a deed to land, containing a recital that the same is subject to a lease on an adjoining strip used as an alley, he will be bound by the recitals in the same, and estopped from disputing the validity of the lease.

Appeal from the Circuit Court of Cass county; the Hon. Charles Turner, Judge, presiding.

This was a bill in chancery, filed by the Illinois Insurance Company against Hans H. Littlefield and David M. Irwin, for an injunction to restrain the defendants from obstructing an alley in Beardstown. The court below, on motion, dissolved the injunction and dismissed the bill, from which order the complainant appealed.

Mr. Henry E. Dummer, and Mr. J. H. Shaw, for the appellant.

Mr. G. Pollard, for the appellees.

Mr. Justice Breese delivered the opinion of the Court:

Appellants claim the alley in question to be a public alley, and a right to an unobstructed use of it as appurtenant to the

24—67th Ill.

ownership in fee of part of lot four in block one, which it bounds. All the lots in this block are fifty feet front on Main street, running back to the Illinois river.

Both parties claim through one Francis Arenz, deceased. Arenz was the owner of lots three and four in this block, and on the second day of April, 1839, conveyed to Robert Lindsey part of lot four in block one, namely: "forty feet off the west side of said lot, fronting on Main street and running back to the Illinois river, the remaining ten feet of the east side of said lot being reserved for an alley between the parties to this deed."

Lindsey sold and conveyed this lot to one Brown, and in the deed, as a part of the description, uses this language: "fronting east on an alley of ten feet, which has been reserved from the part of said lot in the aforesaid block."

In subsequent deeds to subsequent purchasers, this strip is described as an alley, in one deed as reserved by T. W. Arenz, and in others as reserved by Francis Arenz.

In the deed conveying the land to James C. Leonard, through whose assignee in bankruptcy appellants claim, the lot is described as part of lot four, block one, commencing at a point on Main street, at the west side of a ten foot alley, and running west on main street twenty feet, thence at right angles with Main street, etc.

In the deed from Leonard to his assignees, it is thus described: "Part of lot four in block one, commencing at a point on Main street at the west side of a ten foot alley, and running to a point on Main street, twenty feet; thence at right angles with Main street, sixty-five feet; thence at right angles, twenty feet to the alley; thence at right angles, to the place of beginning." In the same deed is conveyed also "a leasehold interest running twenty years from September, 1870, in and to the alley on part of lot four in block one, commencing in Main street and running towards the Illinois river thirty-six feet."

In the deed of Leonard's assignees to appellants, the lot bears the same description as in Leonard's deed to them, and contains this reservation: "Subject, however, to a leasehold which the said James C. Leonard held on part of the alley above mentioned, and which leasehold, with the right of using walls, was sold on this day to ———."

To show this ten feet was not a public alley, it is only necessary to look at Arenz's deed to Lindsey, being the first in the series. In that deed it is distinctly declared by the parties to it, as follows: "The remaining ten feet of the east side of said lot being reserved for an alley between the parties to this deed." Here is plainly avowed the purpose, not for the use of the public, but for the parties to that deed.

Arenz was then the owner of lot three on the east, and it was quite competent for him, owning also lot four, to stipulate with the purchaser of all but ten feet of that lot, that these remaining ten feet should be an alley for their use as owners of the adjoining lots.

The title to the west half of this lot three was sold by Arenz, and, by *mesne* conveyances, became vested, in January, 1854, in Horace Billings, and is still in him. In 1858, one Norbury, through whom appellants claim, conveyed to this same Billings this part of lot four, with the same description, with reference to the alley, as in the other deeds subsequent to the deed to Lindsey.

In August, 1864, Billings and wife conveyed the lot to George Plaker, with the same description as to the alley.

On the 24th of September, 1870, Plaker, then being the owner of this part of lot four, and Billings of the west part of lot three, executed a lease of this alley, so called, to Leonard for the term of twenty years. This is the leasehold interest to which the lot, when purchased by appellants, was subject, and which had, before the sale to them, been stricken off and sold to one Irwin, for the sum of one hundred and eighty dollars. This leasehold interest is described as " the ten foot alley taken off lot four (4) from the east side, ten feet in width

and extending back towards the Illinois river thirty-six feet," making a plat of ground ten feet by thirty-six feet. Now, on the hypothesis, and which is the true one, that this ten feet was reserved for his use as proprietor of the west half of lot three, and for Lindsey's use, to whom he had sold all of lot four except this ten feet, if Arenz's heirs do not complain, surely the owners of the adjoining lots, for whose use the strip was reserved, might execute such a lease, and appellants, when they purchased, did so with knowledge of its existence, and which, probably, enabled them to purchase at a less price, that fact foreshadowing that the alley would be closed up.

The terms used to manifest the reservation and its purposes are plain and unmistakable as to intention—"being reserved for an alley between the parties to this deed."

Surely A may agree with his neighbor, an adjoining owner, that he shall have a passway ten feet wide over A's land; that it shall be an alley between them; but this would give the public no right to such an easement as appellants claim.

That a dedication of land to public use may be made by mere verbal declarations, if accompanied by such acts as are necessary for that purpose, is well established, but, to make a valid dedication, an intention to appropriate the right to the general use of the public, must exist. Where the appropriation is for the use of particular persons only, and made under circumstances which exclude the presumption that it was intended to be for public use, it will not amount to a dedication.

It matters not in what way the grantors from Lindsey down to appellants may have described the premises they conveyed, and as bounded by an alley; that does not bring the alley into existence as a public alley, nor does their saying so make it so. It is true, it was for years open to the public, but Arenz claimed it all the time, so his brother and executor testifies, as his property, and, though he may never have paid taxes on it, his right is not lost thereby.

In *Hall* v. *McLeod*, 2 Metc. (Ky.) at page 105, in a well considered case, it is said, the intention of the proprietors of

the land, rather than the time of sufferance, must determine the fact of dedication. The use will be presumed to have been in accordance with the intention of the owner, and when the way is opened as a private pass-way, and that fact clearly appears, it can not be converted into a public highway by the mere use thereof, no matter how long that use may be continued. A still stronger case is found in 35 Barb. 395, *Carpenter* v. *Gwynn.*

In the case before us, the use of this pass-way by the public was quite consistent with the purpose for which it was reserved by the owners, and the public acquired no rights in it.

Appellants purchased subject to the lease on this strip of land, with no right to use it as an alley, but subject to the right of the lessees to close it. That appellants are bound by the recitals in the deed to them, can not be denied or questioned. The deed was made expressly subject to this leasehold interest. Suppose Arenz was alive and owner of lot three, and four also, can it be doubted his right to close this alley would be perfect? If he could, it is equally the right of those who occupy his place to close it.

There is no proof this supposed dedication was ever accepted by the public, acting by the proper authorities. Acceptance is essential. Washburn on Easements, 142; *Marcy* v. *Taylor,* 19 Ill. 634; *Daniels* v. *The People,* 21 ib. 442; *Proctor* v. *Town of Lewiston,* 25 ib. 153; *Rees* v. *City of Chicago,* 38 ib. 332.

Appellants, under the second point made, insist that the use of the alley by the public for more than thirty years was a dedication to the public, and refer to *Warren* v. *Trustees of Jacksonville,* 15 Ill. 236.

As we have said, the fact of dedication rests in intention, not in the time of sufferance. The marked difference between this and the case above cited, is, that the recital of the agreement in January's deed to Duncan, reconveying the interest

in the Railroad Square, was held sufficient evidence of a dedication for Church street from State street to North street, when taken in connection with the recitals of dedications for similar purposes in Duncan's prior deed to January, and the subsequent acts of the public in using, claiming and working the same as a street for seven years, three of which were in the lifetime of Duncan.

Church street, or the ground occupied by it, was the subject of controversy. By these deeds, referred to by the court, this piece of land was designated as a public street. The intention, therefore, of the parties to these deeds was manifested, and the subsequent user by the public and working on the street, was evidence of a dedication and an acceptance.

The case of *Alvord* v. *Ashley,* 17 ib. 363, is based on *Warren* v. *Trustees of Jacksonville, supra,* and the proof showed an intention to dedicate the land to the use of the public, and an acceptance by the public by user and by repairing the highway, for more than twenty years.

The cases cited from 6 Peters, *City of Cincinnati* v. *The Lessees of White,* 431, and *Barclay et al.* v. *Howell's Lessees,* 498, were clear cases of dedication, and conflict with nothing we have said.

This view renders it unnecessary to consider other points made in the case. There is an absence of any proof that Arenz ever declared, by words or actions, an irrevocable intention to make this strip of land a public alley. His intention is manifested by his deed to Lindsey.

The decree of the circuit court must be affirmed.

*Decree affirmed.*