## CHARLES S. CLARKE *et al.*

### *v.*

## SARAH A. GAFFENEY.

*Filed at Mt. Vernon March 30, 1886.*

1. EASEMENT—RIGHT OF WAY—*of the conditions upon which an easement may exist—and in whose favor.* An easement, as in the case of a right of way, may be created by the disposition made of the premises by the owner of the estate, and upon a severance of the title the purchasers will take their respective shares as they existed in the hands of the former owner, the foundation of the doctrine of easement, in such and like cases, being a disposition and an arrangement of the premises as to the use of the different parts by him, having the unity of seizin, and then a severance.

2. In this case, the owners of a tract of land subdivided the same into lots, according to a plat made by them, which was recorded. By the plat there appeared to be two tiers of the lots, separated by a strip of ground extending along the entire plat. Subsequently the owners offered the lots for sale at public auction, announcing at the time that the strip of land separating the lots as mentioned, had been laid out as a road for the use and benefit of those buying lots, so that they could thereby have access to a public highway already established, and without which there would be no convenient means of access to or egress from the lots which lay remote from the public road. It was this announcement that induced persons to buy. The lots were sold and conveyed to various purchasers. More than twenty years afterward, within which time neither the original owners nor their heirs made any claim of ownership of the strip of ground separating the two tiers of lots, a person procured from the heirs a conveyance of the same, and brought ejectment to recover possession. It was *held*, the easement or right of way over that strip of land passed to the purchasers of the lots by their purchase and deeds of conveyance. The title to each lot passed to the purchaser, with the advantages conferred upon the property by the former owner, as well as subject to any burden imposed thereon. So no rights passed to the purchasers from the heirs, inconsistent with the right of easement in the lot owners.

3. And, under the circumstances, the purchaser holding the conveyance from the heirs of the original owners was as much estopped from interfering with that right of way as the original owners themselves would have been.

4. Nor was it essential to the right of the purchasers of the lots to the enjoyment of the easement, that it should have been mentioned in their deeds. Incorporeal hereditaments, appendant or appurtenant to land, pass by a conveyance of the land to which they are annexed, without even mention of the appurtenances.

APPEAL from the Circuit Court of Madison county; the Hon. WILLIAM H. SNYDER, Judge, presiding.

This was an action of ejectment, brought by Sarah E. Gaffeney, against Charles S. Clarke and Mary W. Clarke, in the circuit court of Madison county, to the March term, 1885. The cause, by agreement, was tried by the court without a jury. The court found for the plaintiff, and rendered judgment accordingly.

In 1856 the owners of a tract of one hundred and forty acres of land made and filed in the recorder's office of the county a plat, by which it was divided into ten lots, of about ten acres each, abutting upon a narrow strip (the land in question) running through the center of the tract. This strip had the appearance on the plat of being a street or road, open at both ends, and the plat was recorded in the proper book. The lots were numbered from one to ten, inclusive, five on each side of such open strip or road. The only way out to the public road, for the lots lying south of lots 1 and 10 was over this strip. On the same day this plat was filed for record, the lots were sold at auction, to various purchasers. It was shown in the evidence that at this sale it was publicly announced by the proprietors that this strip was left for the use and benefit of them that bought the lots. Deeds were made to the lots by their numbers, as shown on the plat, and appellants, through *mesne* conveyances, became the owners of lots 1, 2, 3 and 4. No claim was ever made by the original proprietors to this strip of land in their lifetime, nor by their creditors after their death, their estates proving insolvent. The plaintiff below afterwards obtained the title to lots 6, 7, 8 and 9, from J. A. Prickett, who had agreed with Charles S. Clarke upon a dividing line between them, about the center of this strip, and a division fence was placed there. Plaintiff also procured deeds from the heirs of the original proprietors for this strip of land, and brought

this suit for the recovery of that part of it within the defendants' inclosure.

Messrs. HAPPY & TRAVOUS, and Messrs. BURROUGHS & WARNOCK, for the appellants:

A conveyance of land abutting on a non-navigable stream, or upon a way, the grantor at the time of the conveyance owning the fee of the stream or way, as well as the land conveyed, gives the grantee the fee to the center of the stream or way, unless there be something in the contract manifesting a different intention. 3 Kent's Com. (5th ed.) 427, 428; Tiedman on Real Prop. secs. 833, 837; Malone on Real Prop. Trials, 254; Tyler's Law of Boundaries, 103; *Braxton* v. *Bressler,* 64 Ill. 488; *Gebhart* v. *Reeves,* 75 id. 307; *Village of Brooklyn* v. *Smith,* 104 id. 439; *Low* v. *Tibbetts,* 72 Me. 92.

The same principles which apply to boundaries on a public road apply also to those on a private road,—that is to say, the presumption that the soil of the road, *usque ad medium filum viæ,* belongs to the owners of the adjoining lands. Tyler's Law of Boundaries, 112; *Holmes* v. *Billingham,* 7 C. B. (N. S.) 325; S. C. 97 Eng. C. L. 327; *Smith* v. *Howden,* 14 C. B. (N. S.) 398; *Fisher* v. *Smith,* 9 Gray, 441; *Boston* v. *Richardson,* 13 Allen, 146; *Jamaica Pond Aqueduct,* 9 id. 159; *Winslow* v. *King,* 14 Gray, 320; *Peck* v. *Dennison,* 121 Mass. 18; *Bissell* v. *Railroad Co.* 23 N. Y. 61; *Perrin* v. *Railroad Co.* 36 id. 120.

Mr. JOHN G. IRWIN, for the appellee:

A private way can not be established by mere parol declarations. It can be acquired only by grant or by prescription, which implies a grant. *Forbes* v. *Balenseifer,* 74 Ill. 184.

It is an interest in land, within the Statute of Frauds, which extends to all incorporeal hereditaments. Browne on Statute of Frauds, secs. 230-232; Angell on Water-courses, sec. 168.

A private way is "the privilege which an individual or several individuals have of going over the land of another. It is an incorporeal hereditament of a real nature, entirely different from a highway." Cruise's Dig. title 45, s. 59; Bouvier's Law Dic. title, "Way."

The fee in one piece of land not mentioned in a deed can not pass as an appurtenant to another tract properly described. *Gebhart* v. *Reeves*, 75 Ill. 304; *Jackson* v. *Hathaway*, 15 Johns. 448; *Tyler* v. *Hammon*, 11 Pick. 193; *O'Linder* v. *Lathrop*, 21 id. 292; *Bridge Co.* v. *Curtis*, 103 Ill. 419.

On the question of dedication of the strip as a road, see *Belleville* v. *Stookey*, 23 Ill. 442; *Village of Princeville* v. *Auten*, 77 id. 325; *Princetown* v. *Templeton*, 71 id. 68; *Trustees* v. *Walsh*, 57 id. 363; *Insurance Co.* v. *Littlefield*, 67 id. 368.

The doctrine of this court is, the "limits of a lot abutting upon a street is the extent of the ownership, and it can not be asserted beyond those lines, and extended into the street on its vacation." *Gebhart* v. *Reeves*, 75 Ill. 307; *Helm* v. *Webster*, 85 id. 116; *Chicago* v. *Rumsey*, 87 id. 350.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

This is an action of ejectment, brought by appellee, against appellants, in the circuit court of Madison county, to recover a strip of land described in the declaration, as follows: Beginning at a point on the east line of lot 1, of John T. Lusk & Co.'s subdivision of the north-east quarter of section 15, town 4 north, range 8 west of the third principal meridian, in Madison county, Illinois, where said east line intersects the south line of the highway known as the Edwardsville and St. Louis road, and running thence south on the east line of lots 1, 2, 3 and 4 of said subdivision, to the south-east corner of the lot last named; thence east sixty-seven links; thence north, on a direct line, to a point seventy-three links east of the north-east corner of lot 2 of said subdivision, and continu-

ing thence north on a line of the same bearing as the one last described, to the line of the Edwardsville and St. Louis road; thence in a southwesterly direction, on the south line of said last mentioned road, to the place of beginning. The description will be better understood by an examination of the following plat, which was introduced in evidence on the trial below:

John T. Lusk and John R. Torrence are admitted to be the common source of title. On June 24, 1856, they had become the owners, by a regular chain of title from the government,

of the one hundred and four acres of land in the north-east quarter of said section 15, which are embraced in the plat above set forth. They are spoken of in the pleadings as J. T. Lusk & Co. Lusk died in December, 1857, and Torrence between 1860 and 1865.

In November, 1856, Lusk and Torrence made the foregoing plat of the one hundred and four acres owned by them, and recorded the plat on November 17, 1856. It shows the subdivision of the one hundred and four acres into ten lots, containing each about ten acres, with a strip of land, containing six and seven-tenths acres, running north and south through the center of the one hundred and four acre tract, and dividing it so that lots 1, 2, 3, 4 and 5 lie on the west side of the strip, and lots 6, 7, 8, 9 and 10 lie on the east side of it. A main road, called the St. Louis road, or the Edwardsville and St. Louis road, ran "on the north side of this land."

On November 17, 1856, Lusk and Torrence, or J. T. Lusk & Co., sold the ten lots at public auction, and Lusk announced publicly to the purchasers at the sale, that the strip of land dividing the lots as above stated, had been laid out as a road for the use and benefit of those buying lots, so that the owners of lots lying south of the main road could have access to it through this strip, without traveling over the property of their neighbors. It was this announcement which induced parties to buy the lots. The proof shows that there was no convenient means of access to or egress from the lots that were remote from the main highway, except through the strip running between the eastern and western tiers of lots. At the auction sale, one Nelson Daniels bought lots 1, 2, 3 and 4, and the deed executed to him and William M. Whaling by Lusk and Torrence, dated November 17, 1856, describes the property as "lots 1, 2, 3 and 4, subdivision of west part, N. E. $\frac{1}{4}$ of sec. 15, town 4 N., R. 8 west; lot 1 contains $9\frac{5}{100}$ acres, lots 2, 3 and 4 contain each $10\frac{40}{100}$ acres." Appellants are now the owners of lots 1, 2, 3 and 4, by a regular chain

of conveyances, beginning with Daniels and Whaling. At the auction sale lots 7, 8, 9 and 10 were bought by Timothy Brown, and lot 5 by Tyler Brown. The proof shows that appellee now owns lots 6, 7, 8 and 9, that one Wolf owns lot 10, and a Mrs. Lix owns lot 5.

During twenty-seven years after the death of Lusk, his heirs and devisees asserted no claim of ownership in the strip of land running between these two sets of lots. During more than twenty years after the death of Torrence, his heirs asserted no ownership therein. In the year 1884 appellee succeeded in obtaining deeds to herself from the heirs and devisees of Lusk and Torrence, conveying the strip in question, and shortly thereafter began this suit.

Ever since the auction sale in 1856, this strip has been used openly and continuously by those who bought at said sale from Lusk and Torrence, and by the grantees from those so buying. The owners of the lots on either side of the strip holding under the purchasers from Lusk and Torrence, have used the whole of the strip, for one purpose or another, from 1856 down to the commencement of this suit. The northern part of it, running south from the St. Louis road for about one hundred yards, was used for twenty years as a roadway or means of approach to the lots lying on either side.

As between Lusk and Torrence, and the original purchasers from them, the latter were entitled to an easement or right of way in this strip of land for the use and benefit of their lots. It would certainly have been an act of great injustice for Lusk and Torrence to have interfered, in any way, with the enjoyment of such easement by their vendees. It is true, that while the title to the one hundred and four acres remained in Lusk and Torrence, the subdivision, as above made, created no easement of any kind. Until a severance, and the premises were held by separate owners, no question of that character could arise. The foundation of the doctrine of easement in this and similar classes of cases is a disposi-

tion and arrangement of the premises as to the uses of the different parts by him having the unity of seizin, and then a severance. "It being a general principle in relation to grants that every grant of a thing naturally and necessarily imports a grant of it as it actually exists, unless the contrary is provided for, it would seem to follow that each portion of the severed premises would pass subject to all the burdens and advantages imposed or conferred by the proper owner." "An easement may be created by the disposition made of premises by the owner of the estate, and, upon a severance of the title, the owners will take their respective shares as they existed in the hands of the former owner." *Morrison et al.* v. *King et al.* 62 Ill. 30.

Lusk and Torrence subdivided and platted this land in such a manner that there was no way of approach to the lots which did not abut upon the main highway, except along the strip in question. They then severed their title by conveyances of different lots to different owners, accompanying their sales with the declaration that each lot owner should have a right of way over the strip to the main road. Each lot passed with the advantages conferred, as well as subject to the burdens imposed, by the original owners. Under the circumstances of this case, appellee, holding by conveyance from the heirs of such original owners, is as much estopped as were Lusk and Torrence from interfering with the right of way of these different lot owners over the strip designated and reserved for their use.

It is not necessary that such right of way should have been specifically mentioned in the conveyances. "Incorporeal hereditaments, appendant or appurtenant to land, as, common of piscary and of pasture, *and right of way,* pass by a conveyance of the land to which they are annexed, without even mention of the appurtenances." (Coke on Litt. 121 b.) In *Hadden* v. *Shoutz,* 15 Ill. 581, a mill and dam had been erected upon a creek running through the quarter section, of

24—116 ILL.

which a certain six acres, on which the mill and dam had been built, were a part. Hadden conveyed the six acres, with the mill and dam thereon, to Shoutz. The dam flowed the water of the creek back upon a part of the quarter section not embraced in the six acres conveyed to Shoutz, and which Hadden owned when he so conveyed. This back-flow of the water upon the land not conveyed, was necessary to the use of the mill, and was held to be an easement appurtenant to the mill, and to have passed by a grant of the mill, as appurtenant thereto. It was further held, that this easement, so long as it was not abandoned, would not be extinguished by a conveyance of the land upon which the water flowed. So in the case at bar, the right of way over this strip passed to appellants as grantees from the original vendees of these lots, and whatever title, if any, appellee has obtained as grantee from the original vendees or their heirs, she has taken subject to such right of way.

The judgment of the court below is therefore reversed.

*Judgment reversed.*

Mr. JUSTICE SCOTT dissenting:

It seems to be conceded that prior to November 17, 1856, John P. Lusk and John R. Torrence were the owners of the strip of land now in controversy. It was then a part of a certain quarter section, which the owners about that date divided into ten lots, of about ten acres each. A plat of the quarter section, showing the relative situation of the lots, was made by a surveyor, and was duly recorded in the office of the recorder in the county where the land is situated. The lots were designated on the plat by consecutive numbers, from one to ten, both numbers included. Between these lots is a strip of land containing about six acres. This strip of land is not numbered on the plat as are the lots, nor is the length and width of it stated, as is done in respect to the lots. The division of the land into lots was made by the owners for

their convenience of making sale of it. It was timber land at the time. The plat made was not intended to be a plat of any town or village, nor was it intended to be an addition to any city, town or village. It was never acknowledged by the owners, as plats of villages or cities are required by statute to be executed and acknowledged. After the plat had been made and recorded, and perhaps on the same day it was recorded, the proprietors sold all of the lots, and executed to the several purchasers deeds conveying the lots as numbered on the plats, and by no other description. The purchasers entered into possession, and since then the several lots have been controlled by them and their assignees. A part of the narrow strip of land dividing the lots sold, is the land in controversy. No sale of any part of this strip of land was made on the day the lots were sold. One of the original owners, John T. Lusk, died December 18, 1857, and the other, John R. Torrence, died shortly thereafter, perhaps between 1860 and 1865. Neither Lusk nor Torrence ever made any conveyance of the land in controversy to any one, and Sarah Gaffeney, plaintiff in this suit, claims to own the title that was in them under quitclaim deeds from their respective heirs. That title so acquired is the one she seeks to maintain in this action. On the other hand, the defendants in possession, Charles S. Clarke and Mary W. Clarke, are the owners, through *mesne* conveyances from the purchasers at the sale made by Lusk and Torrence, of a number of the lots as they appear on the plat, and they insist that the strip of land intervening the lots was left by the proprietors making the plat, as a road for the use and benefit of such persons as might buy lots abutting on either side, and that by operation of law the conveyance of the lots on either side of the narrow piece of the land carried the title to the center of what they allege was a road or private way. Since then it has become unnecessary for a road, and defendants having inclosed that part next their lots to the center line, this suit was brought

to recover that part of the strip of the land which defendants have in possession.

There can be no controversy that plaintiff's title is the better title, and must prevail, unless the conveyance of the several lots abutting on the narrow strip intervening the lots, by operation of law, carried the title to the center line. No other title is insisted upon. Obviously the conveyances of the several lots could not have the effect claimed for them, unless it shall be ascertained the land on which the lots abutted was left by the proprietors for a public road, and was either granted to or dedicated to the public for a road or highway. This is the vital question in the case.

As before stated, the plat made of the quarter section was not a town or village plat, nor was it an addition to any city or village, hence it is not a street in the sense the term street is used in the statute, where the fee vests in the corporation or municipality. Nor can it be said it is a public highway or road, in the statutory or any other sense. It was never granted to or dedicated to the public for a highway or public road. The owners, at the time the plat was made, forbade the surveyor to mark it "a road." Nor is there the slightest evidence it was ever used or accepted by the public for a highway or public road. It is essential to every dedication of land for public use, as, for a highway or public road, there should be an acceptance and appropriation to the uses intended, and until there is such an acceptance, the owner may withdraw his offer and appropriate his land to any other purpose. It is obvious, from the evidence in this case, the public, by its officers, never contemplated appropriating this land to public uses as for a highway or public road. It was not practicable to do so, and it never was used by the public either for a highway or for any other purpose whatever. The assumption this was a highway or public road, has absolutely nothing in its support.

But was it a private way for the use and benefit of the adjoining landholders? Private ways for the use of particular persons are created only by grant, or by user for such length of time as implies a grant. No doubt a dedication of land to public uses may be made by mere verbal declaration, if accompanied by such acts as are necessary for that purpose; but to make a valid dedication, an intention to appropriate the right to the general use of the public must exist. Where the appropriation, however, is for the use of particular persons *only,* and made under circumstances which exclude the presumption it was intended to be for public use, it will not amount to a dedication. (*Illinois Ins. Co.* v. *Littlefield,* 67 Ill. 368.) Applying these principles, it is plain this was never even a private way. It was never granted for that purpose by the owners, nor does such right exist by prescription, or by user for such length of time as implies a grant. The utmost that can be claimed is, that at the time of the sale the owners gave purchasers a verbal permission to pass over this strip of land when necessary, as a means of ingress and egress to and from such lots as they might buy. That is a mere license, and is revocable at any time. In *Forbes* v. *Balenseifer,* 74 Ill. 183, it was ruled a verbal agreement between the several owners of several tracts of land, by which each gives to the others a right of way over his land, amounts to a mere license, revocable at the will of either party. Verbal declarations are not admissible to prove a grant of a private way for the use and benefit of certain persons, and without a grant it is apprehended no such right exists. It was so expressly ruled in *Forbes* v. *Balenseifer, supra.*

Treating the permission given purchasers of lots to pass over this strip of land as a mere license, it is quite evident the doctrine insisted upon, the conveyance of land abutting on a highway where the grantor, at the time of such conveyance, owned the fee of the highway, gives the grantee the fee

to the center line of the highway, unless where something in the contract indicates a contrary intention, can have no application to the facts of this case. That doctrine is applicable only to streets or highways where the public has acquired, by grant or condemnation, or otherwise, an easement over premises, the fee remaining in the original owner. It has never been applied where certain persons had a mere license to pass over the land of another. There is no principle on which it can be held, under the facts presented by this record, the conveyance of the lots by numbers carried the fee to the center line of another piece of land owned by the grantors. It may be, and doubtless is, true, that where an easement exists, it may pass, without express mention, as an incident to a grant of the adjacent premises; but as was said by this court in *Gebhardt* v. *Reeves*, 75 Ill. 301, "there can be no authority found, either in reason or justice, for the proposition the fee in one piece of land not mentioned in the deed passes as appurtenant to another tract granted by an accurate description, giving it a definite and limited boundary." In such cases the principle is, the limits of the lot described mark the boundary, beyond which the title of the grantee does not extend. That is precisely the case here. The land, in this instance, was conveyed by a definite description, and as it abuts on no public highway, nor even upon any private way existing by grant or other lawful right, there is no principle upon which it can be held the grant carried the fee to the center line of another adjoining tract owned by the grantors. It therefore seems plain that plaintiff's is the better title, and should prevail.