## STEPHEN C. TOOF

### v.

## CITY OF DECATUR.

1.  PUBLIC HIGHWAY BY PRESCRIPTION—PRESUMPTION.—To establish a highway by prescription it must be shown that the use of it as such has been public for twenty years, adverse or under claim of right, uninterrupted, with the acquiescence and yet without agreement of the owner of the land made within that period.   As a rule, the public use of it for that period as a highway, unexplained, will raise a presumption of the other conditions stated and shift the burden of proof as to them.

2.  SAME—EXCEPTIONS.—An exception to the above rule is recognized in the case of wild and uninclosed land and where an open way in a town or village is affirmatively shown to have been so made or left by the owner for his private use though the public also may have used it without objection by him, and where this object and purpose are manifested from the way itself or its especial relation to his other premises.

3.  INTERRUPTION TO DEFEAT RIGHT.—The interruption to defeat the right by prescription must be an interruption of the right and not simply of the use or possession.

4.  LEVY OF TAXES.—The levy and collection of taxes on the land by the city against the owner is not conclusive against the claim that it is a public highway.

5.  CHANCERY JURISDICTION.—Defendant city was, and for twenty-six years had been, in actual peaceable possession of land for public use, claiming it as part of a legal highway within the city and therefore under its control.   Complainant erected a fence thereon and filed a bill in equity for an injunction to restrain the city officials from removing the fence.   *Held,* that the bill is without equity.


APPEAL from the Circuit Court of Macon county ; the Hon. C. B. SMITH, Judge, presiding.   Opinion filed February 25, 1886.

Messrs. OUTTEN & VAIL, for appellant; that in order to acquire a right by prescription the use must be adverse, under a claim of right, exclusive, continuous and uninterrupted, cited Washburn on Easements, 124, § 26 (2d Ed.); Sargent v. Ballard, 9 Pick. 251, 255; Warren v. The President, 15 Ill. 241, 242; Kile v. Town of Logan, 87 Ill. 64; Ill. Ins. Co. v. Littlefield, 67 Ill. 368; Harper v. Town of Dodds, 3 Bradwell, 331; Fox v. Virgin, 5 Bradwell, 515; Fox v. Virgin, 11 Bradwell, 514; Gentleman v. Soule, 32 Ill. 271; Herhold v. Chicago, 108 Ill. 467; Peyton v. Shaw, 15 Bradwell, 192; Bryan v. City of East St. Louis, 12 Bradwell, 390; Irwin v. Dixon, 9 How. (U. S.) 10.

Messrs. MILLS BROTHERS, for appellee; that, with the exception of wild or uninclosed land, where the public has been permitted to use for public travel the *locus in quo*, for a term of twenty years, a public highway is thereby created, cited R. S., Ch. 121, 1878, 1883, § 1; Green v. Oakes, 17 Ill. 249; Alvord v. Ashley, 17 Ill. 363; Daniels v. People, 21 Ill. 438; Town of Lewiston v. Proctor, 27 Ill. 414; City of Chicago v. Wright, 69 Ill. 318; Stager's Road and Bridge Law, 13, Hanson v. Taylor, 23 Wis. 547; Ellsworth v. Grand Rapids, 27 Mich. 250; Washburn on Easements, p. 129, Sec. 31 (2d Ed.).

PLEASANTS, J. Bandy's addition to the town of Decatur, consisting of four and a half blocks from north to south, was laid out in 1836. Along the west side of it was left a strip thirty feet in width, intended to be the east half of a street if the owners of the land adjoining it on the west should contribute the other half. This not being done, in 1852 the proprietors took measures to vacate said strip and make partition of the whole addition. By the decree it was divided into lots and numbered as of the blocks adjoining them respectively, of which each of the parties received one or more. Those lying north of Main street were soon inclosed by their owners, but the two adjoining block four (4), which is the south block of the addition, between Main and

Wood streets, though fenced in 1853 on the sides, except on the east at the alley running east and west through said block, were left open at the ends on said streets and thus formed a continuous passway between them.

The portion north of the alley was known as lot 18 of said block and that south of it as lot 17. In the partition referred to said lot 18 was set off to R. J. Oglesby, who by deed of March 1, 1853, conveyed an undivided half of it, together with lots 8, 7 and 6, adjoining consecutively on the east, to Daniel Barnes, and about the same time the other undivided half to Jonathan Stamper, who owned the land on the west. Barnes and Stamper then made a parol partition of it by which Barnes took the east and Stamper the west half. There was never any exchange of releases or other deed between them or their grantees, but the right of each as thus agreed on was recognized by the other and taxes have from that time been assessed, levied and collected accordingly.

In June, 1857, Barnes conveyed the premises described in his deed from Gov. Oglesby, and by the same description, to E. M. Thorpe, and he conveyed the same in October following to John L. Adams, who, in 1869, conveyed the same to appellant.

On the first day of June, 1879, appellant inclosed the east half of said lot 18, and upon the council's ordering the street supervisor to remove the fence, filed the bill herein, praying that upon final hearing the city be enjoined from interfering with him in the peaceable and quiet possession of said premises, "and for a preliminary injunction, without notice, to restrain said city, its officers and servants, from removing said fence or interfering with said premises" until a hearing could be had thereon.

The city answered, denying that the measures taken, as alleged, to vacate the street or alley of which the premises in question formed a part were effectual, and claiming the right of said city and the public to the use of the same as a highway, by prescription or dedication; to which answer a replication was filed, and on final hearing upon the pleadings and proofs, the circuit court dissolved the injunction and dismissed the bill for want of equity. Complainant brings the record here by appeal.

Toof v. City of Decatur.

The evidence is all in documents and deposition, and the only errors assigned are the dismissal of the bill and the refusal of the relief sought.

To establish a highway by prescription it must be shown that the use of it as such has been public for twenty years, adverse or under claim of right, uninterrupted, with the acquiescence and yet without agreement of the owner of the land made within that period. Washburn on Easements (2d Ed.), p. 124 § 26 ; 2 Greenl. on Ev., § 539–539a ; Gentleman v. Soule, 32 Ill. 279 ; Daniels v. The People, 21 Id. 438.

As a rule, however, the public use of it for that period, as a highway, unexplained, will raise a presumption of the other conditions stated and shift the burden of proof as to them. Washb. on Ease. p. 129, § 31 ; Steffey v. Carpenter, 37 Pa. St. 41 ; Daniels v. The People, *supra;* Town of Lewiston v. Proctor, 27 Ill. 417 ; City of Chicago v. Wright, 69 Id. 327 ; Peyton v. Shaw, 15 Bradwell, 192. Such use is in its nature exclusive of and therefore presumably adverse to any private claim, which is also exclusive.

An exception to this rule is recognized in the case of wild and uninclosed land. Warren v. Pres., etc., of Town of Jacksonville, 15 Ill. 241 ; Kile v. Town of Logan, 87 Id. 64 ; Fox v. Virgin, 5 Bradwell, 515.

Nor does it apply to an open way in a town or village, affirmatively shown to have been so made or left by the owner for his private use, though the public also may have used it without objection by him. Ill. Ins. Co. v. Littlefield, 67 Ill. 368, and cases there cited. Nor where this object and purpose are manifest from the way itself or its especial relation to his other premises. Washb. on Ease. p. 182.

The evidence does not clearly bring this case within either of these exceptions. Here the land was part of an addition to an incorporated town, and the adjoining lots and lands were inclosed twenty-six years before appellant fenced it up in June, 1879. As a way it had no especial relation to his other premises except that it adjoined one lot, but served equally and in like manner the proprietors of other lots in the same block and the public at large as a passage between two princi-

pal streets.   The other proof claimed, to show it was intended for private use, is not entirely satisfactory.   Adams carried on the business of butchering for a short time from his purchase in the fall of 1857, and as he had occasion, having no barn until 1860, piled wood, lumber, hay and other articles upon it. His wagon stood there.   He rendered tallow there.   At one time he had an ash-hopper on it, and also inclosed a part for a calf pen, which Mrs. Adams thinks was built in 1858 and remained about two years, but she was testifying long after the events and was not certain as to the time.

It is a matter of common knowledge that such uses of recognized alleys in our cities, towns and villages, are often made by tenants of abutting lots, and tolerated without remonstrance by the authorities unless the obstruction amounts to a serious inconvenience to others.   Such acts of occasional and temporary appropriation are not understood to be in denial of the public right.   Here the alley way claimed was unusually wide, so that portions of it might be so used without impairing its beneficial enjoyment by the public.   The evidence in the record shows little or nothing of such obstructions except by Adams, and by him for only a short time immediately following his purchase, when the public need was much less than afterward, by the increase of population and business in that vicinity, it came to be.   It is not denied that there was always room enough left for the convenient passage of persons and teams, and we understand that the interruption to defeat the right by prescription must be an interruption of the right and not simply of the use or possession.   2 Greenl. Ev. § 545.

We therefore find in these appropriations of portions of the lot for his private uses no such distinct and positive assertion of exclusive right in himself as would necessarily, if made within twenty years before the first day of June, 1879, interrupt the public uses and so defeat the claim by prescription, nor is it conclusively shown that they were made within that period.

So, the levy and collection of taxes on the land by the city against the owners is not conclusive against this claim.   City of Chicago v. Wright, 69 Ill. 328; Lemon v. Hayden, 13

Wis. 159; Wyman v. The State, Ibid. 663.  Indeed it would seem to be of little weight where the city makes no claim to the fee in the land, as is presumed, from the fact of his appeal to this court, appellant understands to be the case here.

On the part of appellee much evidence was produced clearly tending to establish its alleged right.   The land in question was originally intended for a highway.   While the owners of the other portion of this strip early fenced it up this was left open.   It was where a highway ought to be, bounding on one side a full platted block.   It opened on two principal streets and was a needed and suitable passway between them.   It had every appearance of a public street or alley.   Its location and limits were precisely defined by fences on its sides.   It was known, at least to some extent, as South Union street.

Such was its condition as far back as 1853 and such it continued to be, without material change, until appellant fenced it up in June, 1879.   A dozen witnesses testify that during all that time it was continuously used, in all respects, as a public highway, by all who had occasion.   They did not pretend to know it was in fact or generally considered to be a street or alley of the city, nor stop to inquire whether, notwithstanding its appearance and use, it yet might not be, but from their observation took it to be such and so treated it, just as they would and did other like ways, without question or hesitation.   It is not claimed that this use was in any instance forbidden or expressly permitted by or on behalf of the land owners or any or either of them.   They simply acquiesced in it with full knowledge of it.   Nor does it appear that any person attempting or desiring so to use it was ever hindered, delayed or in any manner inconvenienced by any of the obstructions mentioned.

In respect to work upon it the evidence is that very little was needed and very little done.   When the sidewalk on Main street in front of it was graded down, some time about 1863, it 'eft an abrupt descent from the lot that was a serious hinderance to loaded teams, which the owners removed by grading it down also.   This is all they did.   The city, too, did

something, not upon the land itself, but with reference to its use as an alley way, about the approaches to it.

Unless this work and the obstructions mentioned amounted to an assertion of exclusive private right in the east half of said lot 18, or a legal interruption of the uses required to establish the public right, the latter is established by what, according to any rational test, is a clear preponderance of the evidence, nothing to the contrary remaining except the fact of the assessment and payment of taxes, which under the circumstances is regarded as of little moment.

We are not advised upon what ground the circuit court dismissed the bill. It does not appear that it was upon a view of the law at all different from that presented above or by the counsel for complainant. The only question discussed in the briefs here filed is whether this half lot is part of a highway by prescription or by dedication. We have thought it unnecessary to consider the question of dedication distinctly, because it is substantially involved in the other, there being no evidence of an intention to dedicate, which must be shown, except the knowledge of and acquiescence in the public user.

Whether the right has been acquired by prescription depends upon the facts in relation to the work done upon the lot by the owners and their appropriation of portions of it at different times for private purposes in the manner shown by the testimony, and the legal significance of those facts, that is, their legal effect upon the user shown.

And if the circuit court found them to be insufficient to defeat the claim by prescription, we are not prepared to say the finding was against the law or the evidence. How that question ought to be decided upon this evidence is not clear. In this particular, as in others, the case is much like that of The City of Chicago v. Wright, 69 Ill. 318, which suggests that behind this doubtful question lies another, not presented by counsel, but worthy of consideration.

In this case, as in that, when complainant erected his fence, defendant was and for years had been, in actual, peaceable possession of the land for public use, claiming it as part of a legal

Toof v. City of Decatur.

highway with'n the city, and therefore under its control. This was all the possession of which it was capable. In such case, even " where the adjoining proprietor retains the fee," the courts regard " the right to the possession, user and control of the property by the municipality as a legal and not a mere equitable right." Appellant, being out of possession, might have tried the validity of the city's claim by an action of ejectment. His forcible entry upon its possession was a trespass, even if the land were not a part of a legal highway. If it was, it was not a trespass, but a duty on the part of the city to remove the fence. The right being legal in character, in dispute and undetermined at law, he wrongfully invaded this actual and peaceable possession, and asks a court of equity to protect him in the enjoyment of what he thus obtained. Will equity, in such a case, take jurisdiction?

It is true that in McIntyre v. Storey, 80 Ill. 121, the Supreme Court sustained a bill to restrain the opening through complainant's premises, by removal of his fences, of what defendants claimed, and he denied, to be a highway by dedication. But there the circumstances were the reverse of those here shown. Complainant was confessedly in actual, peaceable possession, and claiming the legal right. Defendants had previously torn down his fence, and he had rebuilt it. Suits were pending, on one side for obstructing a highway and on the other for trespass, and were likely to be multiplied. And there was danger of irreparable injury. Under such circumstances no doubt of the jurisdiction is entertained. We see no conflict between the opinion in that case and that of Mr. Justice McAllister in the 69th Ill. upon the authority and reasoning of which we incline to think this bill can not be maintained upon the facts here in evidence.

But whether that be so or not we can not say the finding of the court below, that here was a highway by prescription, if it did so find, was unsupported by the proof.

Decree affirmed.