# THE CITY OF CHICAGO

### v.

### JOHN BORDEN.

*Opinion filed June 19, 1901.*

1. STREETS AND ALLEYS—*when alley is a private one.* If a strip of land is reserved for an alley by the parties to a deed, or by the terms of the instrument creating the alley the appropriation of the land embraced therein is for the use of particular persons only, the alley is a private one.

2. SAME—*when term "alley" will be taken to mean a private alley.* If the term "alley" is used in a deed or in a plat it will be taken to mean a private alley, where the word "private" is prefixed or where the context requires that a different meaning than that of a public alley is to be given to the term.

3. SAME—*all mesne conveyances need not specially mention private alley.* It is not essential to the enjoyment of the easement in an alley by the purchasers of lots abutting thereon that the alley be mentioned in all of their deeds, since a private way appurtenant to the land conveyed passes with the dominant estate as incident thereto.

4. SAME—*constant reference, in deeds, to alley as being private excludes idea of dedication.* The constant reference to an alley as private, by the owners of the various abutting lots, in their deeds, negatives the idea that there was ever any dedication of the alley or offer to dedicate the same to the public use.

5. SAME—*vital principle of common law dedication is the animus donandi.* There can be no valid common law dedication where there is no manifestation by the owner, either by formal declaration or by conduct, of an intention to donate the same to public use.

6. SAME—*dedication is not an act of omission to assert a right.* A dedication is not an act of omission to assert a right but is the affirmative act of the donor, resulting from an active and not a passive condition of the owner's mind.

7. SAME—*way by prescription cannot be based on the permissive use.* Where the use of an alley by the public is by mere permission, only, and not adverse, there is no basis upon which a way by prescription can rest.

8. SAME—*when presumption of a grant arising from user is rebutted.* The presumption, arising from user of an alley for a prescribed statutory period, that there has been a grant of the way to the public, is rebutted by conclusive evidence that the grant was of a private and not a public alley.

9. SAME—*effect, as to status of alley, of making of assessor's plat.* The fact that property lying upon an alley has been assessed according

to the assessor's subdivision is immaterial as affecting the rights of adjoining owners in the alley, or as tending to show any acceptance of the alley by the city.

10. SAME—*failure of owner of land in a private alley to have the same assessed does not destroy easement.* The easement which the adjoining owners have in a private alley cannot be taken from them by the act of the assessor in not assessing the alley, nor by the act of the owner of the soil in the alley in not causing same to be assessed.

11. SAME—*private alley does not become public because not taxed.* The fact that the ground embraced in a private alley is not assessed for taxation, and that no taxes are paid thereon by reason of such non-assessment, does not change the character of the alley from a private to a public one.

12. SAME—*effect of levying special assessment for improvement of alley.* The owner of land used as a private alley cannot be deprived of the same by a proceeding to levy a special assessment upon adjoining property for its improvement as a highway.

13. SAME—*evidence tending to show acceptance is unavailing in absence of any dedication.* Evidence of acts tending to show an acceptance of an alley by the public is unavailing, in the absence of any proof of a dedication or offer to dedicate the alley to the public.

APPEAL from the Circuit Court of Cook county; the Hon. R. W. CLIFFORD, Judge, presiding.

The original bill in this case was filed on July 25, 1899, and the amended bill on October 19, 1899. The bill was filed by the appellee against the appellant for the purpose of enjoining appellant, its officers, servants, etc., from interfering with the appellee in the excavation of areas or cellars under a portion of an alley, alleged to be a private alley, running north from Washington street in the city of Chicago in the rear of, and lying ninety feet west of, State street. The original and amended bills allege, that appellee is the owner in fee of the north ninety feet of said alley, subject to an easement therein, belonging to the owners of the property abutting thereupon. The bill also alleges, that the appellee is the owner of the adjoining property lying east of the north ninety feet of said alley, and extending to State street in the city of Chicago.

The court entered a decree substantially in accordance with the prayer of the bill; and the present appeal is prosecuted from such decree.

The facts as gathered from the pleadings, the proofs, the master's report, and the decree, are substantially as follows:

The alley in controversy is described as the west ten feet of the east twenty feet of the north ninety, or ninety-one and a half, feet of lot 7 in block 37 in the original town of Chicago. Block 37 is bounded by Washington street on the south, Randolph street on the north, Dearborn street on the west, and State street on the east, and lies in the south half of section 9, township 39, north range 14 east of the third principal meridian. The alley of which the ninety feet in question is a part, extends from Washington street northward through said block 37 one hundred and eighty feet more or less to an alley eighteen feet wide, running east and west from State street to Dearborn street in said city. The following plat shows the south half of block 37 in the original town of Chicago:

The alley in controversy is located upon the west ten feet of the east twenty feet of lot 7, as shown upon the above plat.

In 1863 the county clerk, for the purpose of taxation, caused a survey to be made, and a plat to be recorded, called "Assessor's division of lots 1, 2, 7 and 8, in block 37," a portion of which assessor's division is shown by the following diagram:

190—28

The north half of lot 8 in block 37 and the north half of the east ten feet of lot 7 in block 37 are the same as lot 10 upon the plat of the said assessor's division, and are owned by the appellee. Appellee also owns a building located upon the north half of lot 8 and the north half of the east ten feet of lot 7, which building fronts upon State street in the city of Chicago, and runs back westwardly to the ten-foot alley herein in controversy, and is bounded upon the north by the east and west alley, eighteen feet wide, and on the south by what is known as the Stewart building, located upon the south half of lot 8 and the south half of the east ten feet of lot 7, otherwise known as lots 13 and 14 in said assessor's division. The Methodist Book Concern has a building upon lot 7, fronting upon Washington street and extending north towards the eighteen-foot alley, and the east side of which abuts upon the ten-foot alley in question.

On August 28, 1844, Hugh T. Dickey was the owner in fee, by patent from the State of Illinois, of said lot 7; and, on that day, he conveyed by warranty deed, which was duly recorded on December 23, 1844, to Hibbard Porter, as party of the second part, the east twenty feet of the north ninety feet of said lot 7, the deed being signed by Porter, the grantee, as well as Dickey, the grantor, which said deed contained the following declaration, to-wit: "It is hereby declared by the said party of the second part, for himself, his heirs, executors, administrators and assigns, that a strip ten feet wide by ninety feet deep, being the west one-half of the above described premises, are (is) to remain forever open and unobstructed as and for an alley, for the free use and enjoyment of the owners and occupants of said lot 7 in block 37 in common with the owners and occupants of the other lots of land and premises lying upon said alley."

By deed, bearing date November 28, 1845, and recorded on June 7, 1847, Hugh T. Dickey, being the owner of the premises hereinafter described, conveyed the east twenty

feet of the south 91$\frac{2}{24}$ feet of said lot 7 to Hart L. Stewart and James W. Sanger, "excepting and reserving the un-interrupted use, easement and enjoyment forever of the west one-half of the above described premises, being ten feet in front and rear by 91$\frac{2}{24}$ feet deep, as and for an alley to be kept forever open, free, clear and uninter-rupted, to remain forever as an alley for the use of the owners and occupants on both sides of said alley." It may be here remarked, that block 37 contained eight lots, each eighty feet front by one hundred and eighty feet deep, lots 5, 6, 7 and 8 fronting upon Washington street. On May 2, 1864, Hibbard Porter and wife, by deed of that date recorded May 9, 1864, conveyed to Uranus H. Crosby the east one-eighth or the east ten feet of the north one-half of said lot 7; also, the undivided nine-tenths of the north half of said lot 8, fronting on State street ninety-one feet and four inches; also, all the life interests of said Porter and wife in the undivided one-tenth of said portion of lot 8; "also all the right, title and interest of said first party, (being Hibbard Porter and wife,) in and to an alley abutting upon the said first described parcel of land lying west of and adjoining the same." By mesne conveyances from Uranus H. Crosby, Samuel M. Nicker-son and Isaac Crosby became, and were on February 6, 1866, the owners in fee of the north half of lot 8 and the east twenty feet of the north half of lot 7, including the ground embraced in the ten-foot alley here in controversy. By deed, dated November 20, 1867, and duly recorded, Isaac Crosby and wife conveyed to Samuel M. Nickerson all their right, title and interest in and to the north half of lot 8 and the north half of the east ten feet of lot 7. By deed, dated December 4, 1867, Samuel Nickerson and wife conveyed to Albert Crosby the north half of lot 8 and the north half of the east ten feet of lot 7. By deed, dated March 12, 1873, which was duly recorded, Albert Crosby and wife conveyed to Charles Busby, for the con-sideration of $145,000.00, the north half of lot 8 and the

north half of the east ten feet of lot 7, all in block 37 "together with the right to use the private alley ten feet in width extending along the rear end of said premises, in common with the owners of other premises abutting on such alley." On March 12, 1873, Charles Busby executed to Charles Hitchcock a trust deed, conveying the north half of lot 8 and the north half of the east ten feet of lot 7 "together with the right to use the private alley ten feet in width, extending along the rear end of said premises, in common with the owners of other premises abutting on said alley." On October 3, 1874, Charles Hitchcock executed to Marcus C. Stearns a trustee's deed, duly recorded, foreclosing the trust deed last mentioned, and conveying the north half of lot 8 and the north half of the east ten feet of lot 7 in block 37 "together with the right to use the private alley ten feet in width extending along the rear end of said premises, in common with the owners of the premises abutting on said alley." On October 22, 1874, by deed of that date, duly recorded, Charles Busby and wife conveyed to Marcus C. Stearns all their interest in the premises last above described "together with the right to use the private alley, ten feet in width, extending along the rear end of said premises, in common with the owners of the other premises abutting on said alley." On February 1, 1875, Marcus C. Stearns and wife conveyed to John G. Shortall the north half of lot 8 and the north half of the east ten feet of lot 7 "together with the right to use the alley next west of said premises in common with the other owners of property, abutters upon said alley." On March 4, 1878, by deed of that date, duly recorded, John G. Shortall and wife conveyed to William A. Fuller the north half of lot 8 and the north half of the east ten feet of lot 7, "together with the right to use the private alley, ten feet in width, extending along the rear end of said premises in common with the owners of the other premises abutting on said alley." On January 3, 1880, by deed of that date, duly

recorded, William A. Fuller and wife, in consideration of $193,000.00, conveyed to the appellee, John Borden, the north half of lot 8 and the north half of the east ten feet of lot 7 "together with the right to use the private alley, ten feet in width, extending along the rear end of said premises, in common with the other owners of the premises abutting on said alley, said premises hereby conveyed being about ninety-one and one-half feet on State street, and extending back westward of the width aforesaid to said private alley."

On May 22, 1873, by deed of that date duly recorded, Hibbard Porter and wife conveyed to Charles Busby the north half of lot 8 in block 37; "also the following part of lot 7 in said block, to-wit: the north ninety feet of the east twenty feet of said lot 7, it being all of said lot 7 conveyed to said Hibbard Porter by Hugh T. Dickey by deed recorded December 23, 1844; the west ten feet of said described parcel of said lot 7 being subject to an easement for private alley as expressed in said last mentioned deed." By deed dated January 3, 1880, Charles Busby and wife conveyed to appellee, John Borden, the north half of lot 8 and the north half of the east twenty feet in width of lot 7 "being subject to an easement for a private alley, the premises hereby conveyed fronting State street in the city of Chicago about ninety-one and a half feet, and extending back westward of the width aforesaid to and under said alley."

By the will of Isaac Crosby, Samuel M. Nickerson was appointed executor and trustee with power to sell and convey real estate at his discretion. On November 11, 1898, Samuel M. Nickerson and wife executed a deed, conveying to the appellee, John Borden, all their interest in the west one-half of the east one-fourth, (being the west ten feet of the east twenty feet), of the north one-half of said lot 7, being the alley in the rear and lying west of and adjoining lot 10 in the assessor's division above described. On November 15, 1898, Samuel M. Nickerson, as

executor and trustee under the will of Isaac Crosby, executed a deed conveying said alley by the description last above set forth to the appellee, John Borden.

The decree, entered by the court in this cause on February 6, 1901, finds that the appellee is the owner in fee simple of the east twenty feet in width of the north half of said lot 7, subject to a private easement or way over the west half of the said east twenty feet in width of the north half of said lot 7, as set forth in the said deed of Hugh T. Dickey to Hibbard Porter; that appellee is the owner in fee simple and in the actual possession of the north half of said lot 8 and of the east ten feet of the north half of lot 7; that his said possession is by a building fronting on State street and abutting in the rear upon the said private alley and connecting with the area under the said alley; that, before filing the original and amended bills herein, the Western Methodist Book Concern commenced the construction of a modern fire-proof high building upon the premises next to and adjoining the east twenty feet of said lot 7; that, in excavating the basement, the south end of said alley-way, to-wit: the south thirty-nine feet more or less of the west ten feet of the said east twenty feet, gave way, the materials thereof sliding into the said basement then being excavated by said Methodist Book Concern, so as to render said alley-way impassable; that appellee proceeded to construct an area in that part of said alley-way next south of the area already in use by him, having erected the walls thereof to grade, and having placed the steel beams or girders upon said walls, when the appellant interfered, and by its officers ordered him to cease work upon said area; that said city claims to be the owner of said west ten feet of said east twenty feet of the north half of said lot 7 in fee simple, and refused to permit appellee to complete said area and the covering thereon, unless appellee would first agree to occupy the same as a tenant of the city, and pay a large annual rental there-

for, etc. The decree finds, that neither the city, nor the public, has any interest whatever in said west ten feet of said east twenty feet of the north half of said lot 7, being the ten-foot alley here in controversy, but that the fee simple thereof, subject to said private easement therein, is vested in appellee. The decree then proceeds to perpetually enjoin the city from making any claim for such rent, and from making any claim to any right, title or interest in said private way, etc.

CHARLES M. WALKER, Corporation Counsel, (GRANVILLE W. BROWNING, of counsel,) for appellant.

PENCE & CARPENTER, for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The material question in this case is, whether the alley, ten feet wide, as described in the statement preceding this opinion, to-wit, the west ten feet of the east twenty feet of the north half of lot 7 in block 37, original town of Chicago, is a private alley, or a public alley. If it is a private alley, then the decree of the court below was correct in enjoining the city and its officers from interfering with its use by the abutting owners, as is set forth in the decree; but if it is a public alley, then the decree of the court below was wrong.

*First*—Where a strip of land is reserved for an alley between the parties to a deed, or where, by the terms of the instrument creating the alley, the appropriation of the land embraced therein is for the use of particular persons only, the alley is a private alley. Where there is a right of way, the use of which is confined to particular persons, and to the owners of property abutting thereon, it is regarded as a private right of way. A private right of way serves as a means of accommodation to a limited neighborhood for local convenience. It has

been defined to be "that right which one man has of going over another's land, and is confined either to the inhabitants of a particular district, or to those occupying or owning certain estates, or it extends to one or more individuals in certain." (*Garrison* v. *Rudd,* 19 Ill. 558; *Illinois Ins. Co.* v. *Littlefield,* 67 id. 368; *Carpenter* v. *Capital Electric Co.* 178 id. 29; 2 Am. & Eng. Ency. of Law,—2d ed. —p. 149). Where the term "alley" is used in a deed, or in a plat, it will be taken to mean a private alley, where the word "private" is prefixed, or where the context requires that a different meaning than that of a public alley is to be assigned to the term. (Elliott on Roads and Streets,—2d ed.—sec. 24). It is also to be understood, that an alley cannot be regarded as a public alley, so as to charge the local authorities with the duty of maintaining it, unless it has been legally established or accepted as such. (Ibid).

If the definitions thus given of a private alley be applied to the alley in controversy in this case, there can be no doubt that it is a private alley. By the terms of the original deed, made by Hugh T. Dickey, the owner and patentee of lot 7, on August 24, 1844, to Hibbard Porter, conveying the east twenty feet of the north half of lot 7, it was declared that "a strip ten feet wide by ninety feet deep, being the west one-half of the above described premises, is to remain forever open and unobstructed as and for an alley for the free use and enjoyment of the owners and occupants of said lot 7 in block 37, in common with the owners and occupants of the other lots of land and premises lying upon said alley." Evidently it was the intention of the parties to this original deed to appropriate the right to use the alley, not to the public at large, but to particular persons, who were the owners and occupants of lot 7 and the owners and occupants of other lots abutting on said alley. The alley, having thus been appropriated to the use of particular persons and not to the public at large, was a pri-

vate alley. Nearly all the deeds, subsequently made by parties holding under Dickey and Porter, refer to the alley as a private alley, and as an alley, the right to use which was confined to the owners of the premises abutting thereon. These deeds, and the terms thereof, are set forth in the statement preceding this opinion, and further quotations therefrom need not be here made.

It is true that the deed, made by Uranus H. Crosby to Edward Aiken on December 26, 1865, and the deed, made by Aiken to Samuel M. Nickerson and Isaac Crosby on February 6, 1866, conveyed the whole of lot 7 without specifically mentioning the alley in question. It is also true, that the deed, executed by Samuel M. Nickerson and wife to Albert Crosby on December 4, 1867, conveyed the north half of lot 8 and the north half of the east ten feet of lot 7, not specifically mentioning the north half of the west ten feet of the east twenty feet of said lot 7 being the alley in question. But the three deeds last mentioned were made subject to the easement in the alley, created by Dickey's deed to Porter in favor of the abutting owners. The deed from Nickerson to Albert Crosby recites, that it is made subject "to the reservations and conditions of a certain release deed made by the Connecticut Mutual Life Insurance Company to Uranus H. Crosby." The release deed in question was introduced in evidence, and contains these words: "Excepting and reserving therefrom the alley laid out over the west half of the east quarter of said lot 7;" showing that Nickerson recognized the existence of the alley and the right of the abutting owners to use the alley. It was not essential to the enjoyment of the easement in the alley by the purchasers of the lots abutting thereon, that the alley should have been mentioned in all their deeds, because incorporeal hereditaments, appendant or appurtenant to land, pass by conveyance of the land, to which they are annexed, without mention of the appurtenances. "A private way, appendant or appurtenant to land conveyed,

passes with the dominant estate as an incident thereto."
(19 Am. & Eng. Ency. of Law,—1st ed.—p. 110; *Clarke* v.
*Gaffeny*, 116 Ill. 362; *Kuecken* v. *Voltz*, 110 id. 264; *Garrison*
v. *Rudd, supra; Lide* v. *Hadley*, 36 Ala. 627). All the sub-
sequent deeds, however, beginning with the deed exe-
cuted by Albert Crosby and wife to Charles Busby on
March 12, 1873, and concluding with the deeds, executed
by Nickerson individually and as trustee under the will
of Isaac Crosby, on November 11 and 15, 1898, to the pres-
ent appellee, not only refer to the alley as a private
alley, but recognize the right of the owners of the prop-
erty abutting thereon to use the same.

It is insisted, however, on the part of the appellant,
that, although the alley was originally a private one,
it was subsequently changed into and became a public
alley. A public alley, or a public highway, may be es-
tablished in three ways: 1: By condemnation in the mode
prescribed by the statute; 2: by grant, which may be es-
tablished by producing the deed making the grant, or by
long continued user for twenty years or more, implying
a previous grant; and, 3: by dedication, either expressed
or implied, to the public use by the owner of the soil.
(*Grube* v. *Nichols*, 36 Ill. 92). It does not appear in this
record, that the alley here in controversy was ever con-
demned in any mode pointed out by the statute. No
statutory plat was executed and filed by any of the own-
ers of the property, designating the alley as an alley,
either public or private. Nor can it be held, that there
ever was any common law dedication of the alley as a
public highway. The constant reference to the alley as
a private alley by the various owners of the abutting
property in their deeds negatives the idea, that there
ever was any dedication of the alley, or offer to dedicate
the same, as a public highway.

"In order to constitute a dedication at common law,
it is essential (1) that an intention on the part of the pro-
prietor of the land to donate the same to the public use,

and (2) an acceptance thereof by the public, be established by the evidence; and (3) that the proof as to these facts must be clear, satisfactory and unequivocal." (*City of Chicago* v. *Chicago, Rock Island and Pacific Railway Co.* 152 Ill. 561). Not only is it true, that the intention originally was to make the alley in question a private alley, but it is also true that there is no clear, satisfactory, and unequivocal proof in this record of any subsequent intention on the part of the owners to donate the same to the public use. The vital and controlling principle in a common law dedication is the *animus donandi;* and where there is no manifestation of intent on the part of the owner of the soil, either by formal declaration, or by such acts as should equitably estop him from denying such intention, to donate the land to the use of the public, it cannot be said that there is a valid dedication. Counsel for appellant say, that the title to the alley remained in Nickerson, individually and as trustee under the will of Isaac Crosby, from July 6, 1866, until November, 1898, when it was conveyed by Nickerson to the appellee. But while it is true that the title to the ground, embraced in the alley, was in Nickerson during the time mentioned, yet the title was so held subject to the right of the abutting owners to use the alley as a private alley. Nor did the fact, that, during that period, Nickerson made no assertion of ownership to the ground embraced in the alley, indicate any intention to dedicate it to the public. "A dedication is not an act of omission to assert a right, but it is the affirmative act of the donor, resulting from an active, and not a passive, condition of the owner's mind on the subject. A mere non-assertion of a right does not establish a dedication, unless circumstances establish the purpose or intention to donate the use to the public." (*City of Chicago* v. *Hill,* 124 Ill. 646; *Grube* v. *Nichols, supra; City of Chicago* v. *Chicago, Rock Island and Pacific Railway Co. supra*). However, we understand counsel for appellant to concede in their reply brief, that the city does not

claim any right to the alley in question, as a public alley, upon the ground of dedication.

*Second*—The contention of the appellant is, that the city has acquired the right to the alley, as a public alley, by prescription; that is to say, that the city, by an alleged public user and an alleged acquiescence of the owners in such public user, together with certain acts of control exercised over the alley, has acquired title thereto, or a right to use the same as a public alley.

"In order to establish a way by prescription, the use and enjoyment of what is claimed must have been adverse, under a claim of right, exclusive, continuous, uninterrupted, and with the knowledge and acquiescence of the owner of the land, in or over which the easement is claimed." (*City of Chicago* v. *Chicago, Rock Island and Pacific Railway Co. supra;* Washburn on Easements, 131; *Toof* v. *City of Decatur*, 19 Ill. App. 204; *Daniels* v. *People*, 21 Ill. 439).

We discover in this record no evidence of any use of this alley by the public, as a public alley, during the period from 1866 to 1898; no witnesses testify, that the alley was used for the purpose of passage and re-passage by the public generally. The only use made of the alley, as a highway and for purposes of passage and re-passage, was by the owners of the abutting property, and by persons having business with such owners. If there was any use of the alley during the period named by other persons, or by any portion of the public, it was merely a permissive use, and not under any claim of right on the part of the public. Where the use is by mere permission only, and not adverse, there is no basis, upon which a right of way by prescription can rest. (*O'Connell* v. *Chicago Terminal Railroad Co.* 184 Ill. 308). Where there has been user of a highway for a prescribed statutory period, a presumption arises from such user, that there has been a grant of the highway. This presumption, however, may be rebutted by testimony. (*Grube* v. *Nichols, supra;* Wash-

burn on Easements and Serv. pp. 104-108). Such presumption is rebutted in the case at bar by conclusive evidence that the grant, made of the alley here in controversy, was the grant of a private, and not of a public alley.

"A mere permissive use of a way laid out as a private alley will not, of itself, transform it into a public alley." (Elliott on Roads and Streets,—2d ed.—sec. 25). "A private way cannot be converted into a public highway by the use thereof by the public, no matter how long that use may be continued, but there must be a dedication and acceptance." (19 Am. & Eng. Ency. of Law,—1st ed.—107).

The use of this alley will be presumed to have been in accordance with the intention of the owners, and the intention of the owners was to make it a private alley for the use of the abutting owners. In *Illinois Ins. Co.* v. *Littlefield, supra,* we said (p. 373): "The use will be presumed to have been in accordance with the intention of the owner, and when the way is opened as a private passway, and that fact clearly appears, it cannot be converted into a public highway by the mere use thereof, no matter how long that use may be continued." (*Hall* v. *McLeod,* 2 Metc. (Ky.) 105; *Carpenter* v. *Gwynn,* 35 Barb. 395; *Dexter* v. *Tree,* 117 Ill. 532; *City of Chicago* v. *Chicago, Rock Island and Pacific Railway Co. supra; Lambe* v. *Manning,* 171 Ill. 612; *White* v. *Bradley,* 66 Me. 258). In the latter case it was said: "A use, which is simply permissive, however long continued, or the opening of a way as a private way and subsequent use of it as such, whatever the length of such use by others, will not make it a public way, nor does it amount to the proof of a dedication." In *Toof* v. *City of Decatur, supra,* speaking of the rule, that, to establish a highway by prescription, it must be shown that the use of it as such has been public for twenty years, adverse, or under claim of right, uninterrupted, with the acquiescence, and yet without the agreement of the owner of the land made within that period, it was said: "As a rule, however, the public use of it for that

period as a highway, unexplained, will raise a presumption of the other conditions stated and shift the burden of proof as to them. * * * An exception to this rule is recognized in the case of wild and unenclosed land. * * * Nor does it apply to an open way in a town or village, affirmatively shown to have been so made or left by the owner for his private use, though the public also may have used it without objection by him. * * * Nor where this object and purpose are manifest from the way itself or its especial relation to his other premises." Washburn in his work on Easements and Servitudes (2d ed. p. 184) says: "And where a way is opened as a private way, and intended as such, and this can be shown, no length of use by others will make it a public way." In *Shellhouse* v. *State*, 110 Ind. 512, the Supreme Court of Indiana said: "Where the owners of land devote a portion of it for use as an alley or passage-way for their own private purposes, such alley or passage-way will not be converted into a public highway simply because the public also uses it by permission from the owners." The evidence here is not sufficient to show, that the general public ever used this alley as a way of passage or re-passage, or made any claim to it as a public alley. But even if there were evidence of such use, it was merely permissive, and conferred no right, because, the way being a private way, such use could be prohibited or discontinued by the owners at their pleasure; and, hence, such use could not have the effect of converting the alley into a public highway, inasmuch as it was not adverse and exclusive, and under claim of right with knowledge and acquiescence of the owner. (*Dexter* v. *Tree, supra*).

*Third*—Counsel for appellant refer to certain circumstances which, as they claim, indicate such a public user of the alley in question by the city of Chicago, as necessarily results in making it a public alley.

One of the circumstances referred to is the making in 1863 of the assessor's plat or subdivision, and marking

what is called an alley thereon, as indicated in the state-
ment preceding this opinion.   A strip of ground ten feet
in width is marked upon the map of this assessor's sub-
division, open at the south end and closed at the north
end, but there is nothing upon the face of the plat, which
indicates that this strip was regarded as a public alley,
or as an alley of any kind.   But, however this may be,
the assessor, in making the plat, did not represent the
city of Chicago or the public, and could not, by any
act of his, create a highway.   No such authority was
conferred upon him.   (*Hamilton* v. *Chicago, Burlington and
Quincy Railroad Co.* 124 Ill. 235).   In the latter case we
said (p. 247): "The assessment or non-assessment of the
premises we do not regard as material, as the assessing
officers do not represent the public for the acceptance of
dedications."   None of the conveyances, executed after
the making of this plat in 1863, describe the property
according to such assessor's plat, but describe it accord-
ing to the plat of the original town of Chicago; and such
conveyances recognize the strip of ground as a private
alley for the benefit of the adjoining owners.   The fact,
that the property, lying upon the alley, has been assessed
according to the assessor's division, is immaterial as
affecting the rights of the adjoining owners to use the
alley, or as indicating any acceptance thereof by the
city.   (*Hamilton* v. *Chicago, Burlington and Quincy Railroad
Co. supra*).   The easement, which the adjoining owners
had in this alley, could not be taken away from them,
either by the act of the assessor in not assessing the al-
ley, or by the act of the owner of the ground, embraced
in the alley, in not causing it to be assessed.   This as-
sessor's plat fails to designate any strips of land as pub-
lic streets or highways.   The owner of property might
subdivide it in such way, as to establish over it only pri-
vate ways for the sole benefit of those who might become
owners of the lots in the subdivision, and in which the
public as such would have no interest, and over which

the public would have no control. (*City of Chicago* v. *Drexel,* 141 Ill. 89).

Another circumstance, urged by counsel for appellant in favor of the public character of the alley, is the fact that it was not only never assessed, but that no taxes were ever paid upon it; and it is claimed that these facts show it to have been the intention of the parties that it should be a public alley. The city or the public cannot become entitled to a man's property because no taxes are assessed against it, and because, by reason of such non-assessment, no taxes are paid by the owner. If this alley was subject to taxation, it was the duty of the public officers to assess the same, and enforce the payment of taxes upon it. In *Illinois Ins. Co.* v. *Littlefield, supra,* we said (p. 372): "It matters not in what way the grantors from Lindsey down to appellants may have described the premises they conveyed and as bounded by an alley; that does not bring the alley into existence as a public alley, nor does their saying so make it so. It is true, it was for years open to the public, but Arenz claimed it all the time, so his brother and executor testifies, as his property, and, though he may never have paid taxes upon it, his right is not lost thereby."

Another circumstance, relied upon by counsel for the appellant, is the fact that in 1884 the city of Chicago levied a special assessment upon the property abutting upon this alley for its improvement as a highway; and the further fact, that the amount of the assessment, to-wit: $265.44, against lot 10 in said assessor's division or the north half of lot 8 and the north half of the east ten feet of lot 7 in block 37 in the original town of Chicago, which was owned by appellee, was paid by him. It is urged that the assessment of the adjoining property for the improvement of the alley shows that it was a public, and not a private highway. The owner of land, used as a private alley, cannot be deprived of the same by a proceeding upon the part of the city to levy special

assessments upon the adjoining property for its improvement as a highway. (*Holmes* v. *Village of Hyde Park*, 121 Ill. 128; *Hunerberg* v. *Village of Hyde Park*, 130 id. 156; *Boynton* v. *People*, 159 id. 553; *People* v. *Sass*, 171 id. 357). In *Holmes* v. *Village of Hyde Park, supra,* we said: "The owner, or claimant of ownership, of the soil covered by the street, is not, as such, merely required to be made a party to the assessment proceedings, and, manifestly, could not, therefore, be concluded or materially affected in his rights by the judgment confirming the assessment." In the *Holmes case*, property belonging to a private owner was specially assessed for the purpose of grading and paving a street where the village had not acquired the soil or title to the street so paved, and the title to the street was in the adjoining property owner who was assessed. In the case at bar, when the special assessment was levied, Nickerson and Isaac Crosby were the owners in fee of the alley, subject to the right of the adjoining owners to use the same. They were not made parties to the assessment proceeding, but, whether they were or not, they could not be concluded or materially affected in their rights by the judgment in the special assessment proceeding. The same is true as to parties, whose property abuts upon the alley, and who had an easement in it for the purpose of passage over it. The title to the alley was not involved in the special assessment proceeding. In the cases last referred to, it was held that the fact, that the property assessed was private property, could not be set up as a valid objection against the confirmation of the special assessment against the adjoining property. If Nickerson and Crosby, the owners of the fee in the alley, had been made parties, they could not have made a defense against the special assessment upon the ground that they were the owners of the fee. This being so, the fact, that they made no defense, will not be considered against them as evincing an intention to dedicate the alley as a highway. Appellee, Borden,

190—29

was not a party to the special assessment proceeding, nor was his name mentioned upon the assessment roll, and, hence, the fact, that he paid this assessment, does not operate as a recognition on his part of the right of the public to the alley. He swears that he paid the assessment, of which he knew nothing until the bill for the amount thereof was presented to him, in order to save his property from sale, and not with the intention of making any dedication of it as a public alley. A city is not obliged to condemn property before levying a special assessment upon it for its improvement upon the authority of the cases last above referred to. Of course, if the property sought to be improved is private property, it cannot be taken by the city for public use without the payment of just compensation to the owner. The law gives the owner, who is entitled to the possession of his property, a remedy by action of ejectment for its recovery, if he is kept out of such possession by the tortious act of the city. The law affords the owner a proper remedy for his compensation. (*Hunerberg* v. *Village of Hyde Park, supra.*) It is to be noted, however, in regard to this special assessment proceeding, that it was a proceeding for the purpose of curbing, grading and paving the alley running from Washington street to Randolph street between State and Dearborn streets. The alley sought to be paved was not merely the pass-way in controversy in this suit, but the longer alley, extending across the alley running east and west between State and Dearborn streets, and running north as far as Randolph street. In other words, the alley here in controversy was only a part of the alley, which the city undertook to pave by virtue of the special assessment proceeding. It appears from the record that, in that proceeding, certain owners of property, abutting upon the portion of the alley north of the east and west alley, and between the latter alley and Randolph street, filed objections to the confirmation of the assessment. Among these objections was the

objection, that the property, on which the proposed improvement was to be made, was private property, and not public property under the control and management of the city, and that said alley was a private alley, and had never been dedicated or platted as a public alley. By a stipulation entered into between the parties, making this objection, and the city, the city agreed that such objection should be sustained as to the property of the objectors. The city consented, that a judgment should be entered, sustaining the objection, so filed, as to the property, for which such objection was made. Thereby, the city consented to the contention that a part of the alley sought to be paved was a private alley.

One or two other circumstances are referred to by counsel for appellant as indicating the user of the alley by the city as a public alley. It is claimed that, shortly after the great fire of 1871, to-wit, in 1873, the alley was graded by the city; but the evidence does not sustain this contention. Busby, who was then the owner of a portion of the property abutting upon the alley, and engaged as a contractor in erecting buildings upon other portions thereof, states that the basements under the buildings, resting upon such property before the fire and destroyed by the fire, were full of *debris;* and that, in excavating the basements for the new buildings, this *debris* was used wherever it could be used. He swears, that he has no remembrance that the city filled the alley up to the new grade at that time. The appellant introduced no testimony to show that the grade was so filled by the city.

Some other testimony was introduced, tending to show that the city paid for cleaning the alley after the year 1873, but the proof does not show that the alley was actually so cleaned by the city, nor, if it was so cleaned by the city, how often, or at what times, whether once a week, or once a month, or once a year, or once in five years.

The circumstances thus referred to might have the effect of showing an acceptance by the city of a dedication of the alley, if there had been any dedication thereof; but, as there was no offer of a dedication by the owner of the fee of the alley, or by any of the owners of the adjoining property having easements in it, such circumstances did not tend to establish an acceptance of a dedication. There can be no acceptance of an offer where there is no offer. If a statutory plat, showing this alley upon it, had been executed and filed by the owner or owners of the property, or, if a plat, not executed according to the statute, had been filed by the owners, or if the owners had made declarations, or done acts indicating an intention to dedicate the property, then the circumstances referred to would be important as showing whether or not the city accepted such dedication or any offer of the same. But, as there is no evidence in the record of any user of the alley by the city, or by the public for the purposes of passage and re-passage, these circumstances, unaccompanied by such user, are not sufficient to establish ownership of the alley in the city, or to fix its character as a public alley. On the contrary, the testimony shows that the Methodist Book Concern, and Busby, and the appellee himself, all of whom owned property abutting upon both sides of this alley between the years 1873 and 1898, made excavations under the alley for the purpose of storing coal, and machinery, and boilers for heating and lighting their buildings. These acts of possession on the part of the abutting owners were inconsistent with the possession and ownership of the soil under the alley by the city, and tended to show that there was no such adverse, continuous and exclusive possession by the city, as to create a title by prescription.

Upon the whole, our conclusion is, that the decree of the circuit court was correct, and, accordingly, that decree is affirmed.                              *Decree affirmed.*