## Luke Dickerman v. Town of Marion.

### Gen. No. 4,551.

1. HIGHWAY—*when evidence does not establish.* Held, in this case, that the evidence did not establish the existence of the highway alleged to have been unlawfully obstructed.

2. HIGHWAY—*what essential to dedication of, at common law.* To constitute a dedication of a highway at common law, there must be an intention on the part of the owner of the land to dedicate it to the public use and the acceptance of it by the public, and these things must be established by clear, satisfactory and unequivocal proof.

3. HIGHWAY—*what essential to establish, by prescription.* To establish a highway by prescription it must appear that the land in question had been used by the public adversely, exclusively, continuously and uninterruptedly for a period of fifteen years with the owner's knowledge.

Action commenced before justice of the peace. Appeal from the Circuit Court of Ogle County; the Hon. OSCAR E. HEARD, Judge, presiding. Heard in this court at the April term, 1905. Reversed, with finding of fact. Opinion filed August 1, 1905.

WILLIAM T. DICKERMAN, for appellant.

FRED. B. SILSBEE and J. C. SEYSTER, for appellee.

MR. JUSTICE FARMER delivered the opinion of the court.

This was a suit brought by appellee against appellant to recover the penalty provided by section 71 of chapter 121, Hurd's Revised Statutes, for obstructing a public highway. The suit was originally brought before a justice of the peace, where judgment was rendered against appellant, and he appealed to the Circuit Court. A trial was had in the Circuit Court without a jury, where appellant was found guilty and a penalty of $3 was assessed, from which judgment he appeals to this court. The alleged highway is a strip of land running in a northwesterly and southeasterly direction on the north side of lots one, two and three, block six of the original plat of Stillman Valley, and lies next to the right-of-way of the Chicago & Pacific Railroad. Block six is a narrow wedge-shaped piece of land. Its greatest width is at its west side, which is the

Dickerman v. Town of Marion.

west line of lot five. The north line of the block runs in a southeasterly direction from the northwest corner until it meets the south line of Main street, forming a point. Lot one is the first lot west from the point of union of these two lines. Lot two is immediately west of lot one, and lot three west of lot two, the length of the lots increasing north and south the further west they are located. These lots are owned by appellant. Somewhere between seventy and seventy-five feet north of the north line of blocks five and six, running substantially parallel with it, is the center of the track of the Chicago & Pacific Railroad. The right-of-way of the railroad at this place is one hundred feet wide, and it is claimed by appellant that the fifty feet next south of the right of way is a public highway. Appellant constructed a cement wall inside this fifty feet limit for the foundation of a building he was about to erect on his lots, claiming it to be inside his line, and this is the obstruction complained of. Stillman Valley was laid out and platted by Joshua White, the owner of the land, in 1874. The railroad was not built nor the right of way conveyed to the company by him until 1875, but the plat shows a line representing the center line of the railroad. South of this line and just about midway between it and the north line of blocks five and six, the plat shows a line running parallel with the line representing the center of the railroad southeasterly to the limit of the village. The space between this line and blocks five and six is not named or mentioned on the plat as a street, alley or highway, and why the line was drawn there does not appear from the plat. All the streets laid out are named in the plat as required by law. It is clear this fifty feet of ground was not made a street by Joshua White when the village was laid out and platted, and we do not understand counsel for appellee to contend seriously that it was made a street or highway by the plat. They say in their brief : " We insist that the evidence in the case will sustain the judgment on the theory that there was a public highway at the place of this obstruction, established either

by dedication or prescription." That the alleged obstruction was erected south of the north line of appellant's lots as platted, is clearly proven by the evidence and is not denied by appellee. The exact location of this line was found by a competent surveyor who made his survey from the original monument established when the town was laid out and platted. The court held in a proposition of law that the method adopted by the surveyor to ascertain the true line of appellant's lots was the correct method, and this is not disputed. Appellant's lots were vacant and unoccupied until he purchased them in 1898, except that the owner of lot four erected a barn and some smaller building, which extended a few feet over on lot three. This, however, was apparently a mistake as to the line, and when the owner of lot three requested it, these buildings were moved off of it. The owners of the lots west of appellant's lots in erecting their north fences, left a space between their fences and the right-of-way of the railroad from forty-five to fifty feet wide, and within this space there was travel by wagons and by persons driving stock and engaged in other pursuits up to the time appellant built his wall.

Lovejoy Johnson owned lots one and two in block seven and occupied them as a creamery. They were the two east lots of that block and were on the south side of Main street, which ran east and west between blocks six and seven. There were only five lots in block six, and the block only extended about half as far east as block seven. The plat shows the north line of block six if continued southeasterly parallel with the railroad, would cut off a small portion of the north end of both lots one and two in block seven. If the south line of Main street were extended due east to the east line of block seven, it would leave a very narrow space between the northeast corner of lot one owned by Mr. Johnson and the railroad right of-way, When Mr. Johnson put up his creamery buildings, he left about fifty feet between them and the right-of-way, but built two tanks in that space about fifteen feet north of his building. He testified

that before Joshua White's death, and about fifteen years after the town was platted, and a good many years after he built his creamery, he had a talk with him about whether there was a road on the north side of blocks five and six, and that Mr. White said there was not. The witness said he inquired of him then why he did not have it laid out, and Mr. White replied, "If you wish to be to the expense of it, ask the commissioners and have the road laid, but I don't; you can do so if you wish to, but let it be; the better way would be to let it be, and in time it will become a road." So far as we are able to discover, this is the only evidence either of word or act aside from the plat, to show an intention on the part of White to dedicate it to the public as a highway. There is some evidence that a little work was done by the commissioners of highways on the fifty-foot strip south of the railroad right-of-way in front of the creamery of Mr. Johnson, and also at a place some distance west of appellant's lots, but no proof of the exercise of any authority over it along the north side of blocks five and six.

It may be that Joshua White intended to leave a roadway between the north line of blocks five and six and the right-of-way of the railroad, but that what he did was not a statutory dedication of fifty feet of land for that purpose we think is entirely clear. The certificate to the plat made by the surveyor is that the plat is a correct representation of the lots, blocks, streets and alleys marked thereon, and that he had placed a good and sufficient stone at the northwest corner of block ten, from which to make future surveys. Starting from this monument, the survey shows that the north line of blocks five and six are within a little less than twenty-five feet of the line of the railroad right-of-way. It would be unreasonable to say that having laid out and platted these blocks, subdivided them into lots and numbered the lots, he intended a portion of them should be used as a street or highway for public travel. The surveyor testified that to leave fifty feet between block six and the railroad right-of way would practically obliterate

lot one from that block. If it were true that Mr. White intended to leave a fifty-foot strip next to the railroad right-of-way for some purpose and caused a plat to be made to show that fact, yet by a misunderstanding as to the exact location of the right-of-way of the railroad, or because the plat was not accurately drawn to a scale, it turned out the strip of land left between the right-of-way and the blocks named was of less width, we do not understand the additional territory to make it fifty feet wide could be taken from the purchaser of lots. Smith v. Young, 160 Ill. 163. The court so held in the propositions of law.

For several years after the railroad was built, there was no fence along the south line of its right-of-way, but a few years before this trial occurred the railroad company built a fence there. The proof shows a considerable use by the public of the land between the railroad and the improvements built on the lots south of it that had been improved. Whether this use extended out to the right-of-way of the railroad before its fence was built is not clear, but after that time it was confined to the space between the right-of-way fence and the fences and buildings south of it. The use of this space by the public for travel was not exclusive. One of appellee's witnesses testified that it had been interrupted a dozen times or more during the last twenty-five years by stone, mortar boxes, headstones and cement walls and fences put there by appellant. In 1882 corn cribs were built partly on this fifty-foot strip and partly on the railroad right-of-way some distance west of appellant's lots. When the corn was shelled from these cribs, the cobs were thrown into this alleged roadway and remained there until they were carried away by people who wanted to use them or until they rotted away. This gave it the name at that place of Cob Alley. One witness testified a carload of stone laid in the middle of this strip of land north of lot one, block five, for ten or a dozen years. Under the proof we do not think a highway was established at the place in question by common law dedication. To constitute a dedication of a highway at common law, there must be an in-

tention on the part of the owner of the land to donate it to the public use and the acceptance of it by the public, and these things must be established by clear, satisfactory and unequivocal proof. City of Chicago v. Borden, 190 Ill. 430; City of Chicago v. C., R. I. & P. R. Co., 152 Ill. 561; Moffett v. South Park Commissioners, 138 Ill. 620; City of Chicago v. Hill, 124 Ill. 646.

Neither do we think the proof establishes a highway by prescription. To establish a highway upon that ground, its use must be shown to have been adverse, exclusive, continuous and uninterrupted for a period of fifteen years with the owner's knowledge. Rose v. City of Farmington, 196 Ill. 226; Town of Brushy Mound v. McClintock, 150 Ill. 129; City of Chicago v. Borden, *supra.*

We are of opinion the evidence was insufficient to establish that the wall built by appellant was in a public highway, and the judgment is reversed.

*Reversed, with finding of facts.*

Finding of facts, to be incorporated in the judgment of the court:

We find as facts that the land upon which appellant built the cement wall was not in, nor a part of, a public street or highway.